MYLAND v MYLAND

Docket No. 292868. Submitted November 4, 2010, at Grand Rapids. Decided November 23, 2010, at 9:05 a.m.

Kimberly Myland obtained a divorce from Thomas Myland in the Kalamazoo Circuit Court, Family Division. To calculate plaintiff's spousal-support award, the court, Curtis J. Bell, J., imputed a $7,000 annual income to plaintiff, who was physically impaired, then multiplied the difference between defendant's income and plaintiff's imputed income by 0.25, a factor it chose because the parties had been married for 25 years. The court denied plaintiff's need-based request for attorney fees. Plaintiff appealed.

The Court of Appeals *held*:

1. The trial court's use of a formula to determine the spousal-support award in place of considering the relevant required factors was an error of law. A trial court has discretion to award spousal support under MCL 552.23, but it must balance the incomes and needs of the parties in a way that will not impoverish either party and is just and reasonable under the circumstances. Among the factors a court must consider in determining a spousal-support award are (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. A court should make specific factual findings regarding the factors that are relevant to the particular case. The trial court's formula in this case did not adequately account for many factors that were highly relevant to this proceeding.

2. The trial judge clearly erred by concluding that plaintiff was able to work and by imputing to her an income of $7,000 after having considered the judge's own medical ailments rather than

the plaintiff's situation, which included a diagnosis of progressive multiple sclerosis, cognitive disabilities, and limited work experience.

3. The trial court erred by failing to consider plaintiff's needs, specifically her health-care costs, and by determining that plaintiff should not be awarded any additional support to cover those costs, which resulted in a spousal-support award that would not cover her living expenses. In determining that plaintiff could pay for her health insurance from her spousal support, the trial court ignored the disparate economic positions of the parties. Plaintiff suffered from a severe, progressive physical impairment and had no meaningful work experience, no specialized training, and no real potential to earn any income, whereas defendant was healthy, earned about $62,500 a year in a field in which he had years of experience, and had a retirement account and health care coverage for which he paid $41 a month.

4. The trial court did not err by failing to enforce a stipulation between the parties that, according to plaintiff, required defendant to sell a vehicle he owned and use the proceeds to pay marital debt. The record indicated that the parties merely agreed that the car was defendant's separate property and that, if he sold it, plaintiff would receive an accounting of the sale and the proceeds would be applied to the marital debt. Because there was no indication of a mutual mistake, fraud, duress, or severe stress and plaintiff's interpretation of the stipulation had no support in the record, the trial court properly enforced the stipulation according to its plain terms.

5. The trial court's refusal to award plaintiff's need-based request attorney fees on the ground that neither party had engaged in egregious conduct or wasteful litigation constituted an error of law. Under MCR 3.206(C)(2)(a), a party who requests attorney fees and expenses must establish that the party is unable to bear the expense of the action and that the other party is able to pay. In a divorce action, this rule requires an award of attorney fees only as necessary to enable a party to prosecute or defend the suit without invading the same spousal assets on which the party is relying for support. On remand, the trial court must apply the correct legal analysis, giving special consideration to the specific financial situations of the parties and the equities involved, and must also consider whether plaintiff would be entitled to appellate attorney fees pursuant to MCR 3.206(C)(1) under the same analysis.

Reversed and remanded for further proceedings.

1. Divorce — Spousal Support — Spousal-Support Factors.

> The statutory provision governing awards of spousal support in divorce actions prohibits the use of rigid and arbitrary formulas that fail to account for the parties' unique circumstances and relative positions; a trial court must consider the relevant spousal-support factors to balance the incomes and needs of the parties in a way that will not impoverish either party and is just and reasonable under the circumstances; among the factors a court must consider in determining a spousal-support award are (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity (MCL 552.23).

2. Divorce — Attorney Fees — Need-Based Attorney Fees.

> A court may not refuse a need-based request for attorney fees on the ground that neither party had engaged in egregious conduct or wasteful litigation; a party who requests attorney fees and expenses must establish that the party is unable to bear the expense of the action and that the other party is able to pay; in a divorce action, this rule requires an award of attorney fees only as necessary to enable a party to prosecute or defend a suit without invading the same spousal assets on which the party is relying for support (MCR 3.206[C][2][a]).

*Miller Johnson* (by *Julie A. Sullivan* and *Eric J. Griswold*) for Kimberly Myland.

*Stancati & Associates, P.C.* (by *Ross F. Stancati*), for Thomas Myland.

Before: M. J. Kelly, P.J., and K. F. Kelly and Borrello, JJ.

K. F. Kelly, J. This appeal from a divorce judgment requires us to determine whether the trial court's

application and use of an arbitrary formula to calculate an award of spousal support was fair and equitable under the circumstances of this case. We hold that MCL 552.23 prohibits the use of rigid and arbitrary formulas that fail to account for the parties' unique circumstances and relative positions and reaffirm the mandate that a trial court awarding spousal support must consider the relevant factors. Further, we must also determine whether a trial court may disregard MCR 3.206(C)(2)(a) when considering a request for attorney fees based on need and merely rely on whether a party engaged in either egregious conduct or wasteful litigation. Under these circumstances, we conclude that the trial court failed to apply the proper needs-based analysis. Accordingly, we reverse and remand.

### I. SPOUSAL SUPPORT

Plaintiff first argues that the trial court erred by failing to adequately consider the parties' ages, health, and abilities to work; their respective abilities to pay alimony; their needs; and their prior standard of living. Plaintiff also asserts that the trial court clearly erred by imputing $7,000 in income to her and by failing to consider the costs of the health insurance she purchased pursuant to the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 USC 1161 *et seq*. We agree. We review a trial court's findings of fact related to an award of spousal support for clear error. *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000). "A finding is clearly erroneous if the appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. at 654-655. "If the trial court's findings are not clearly erroneous, this Court must then decide whether the dispositional ruling was fair and equitable in light of

the facts." *Berger v Berger*, 277 Mich App 700, 727; 747 NW2d 336 (2008). We must affirm the trial court's dispositional ruling unless we are firmly convinced that it was inequitable. *Id.*

A trial court has discretion to award spousal support under MCL 552.23. *Korth v Korth*, 256 Mich App 286, 288; 662 NW2d 111 (2003). The primary purpose of spousal support is to "balance the incomes and needs of the parties in a way that will not impoverish either party" on the basis of what is "just and reasonable under the circumstances of the case." *Moore*, 242 Mich App at 654. Among the factors to be considered are

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003) (citations omitted).]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Korth*, 256 Mich App at 289.

In this case, the trial court determined that defendant's income was $62,500 a year and imputed $7,000 in income to plaintiff. It then awarded plaintiff spousal support of $13,875 a year ($1,156 a month) after considering only the length of the parties' marriage. To reach this number, the trial court applied a mechanistic

formula,[1] stating that it had "a formula that it has utilized in the past" and it was "using that as a guideline . . . ." Accordingly, the court multiplied the difference between defendant's income and plaintiff's imputed income ($62,500 - $7,000 = $55,000) by 0.25. The trial court stated that it chose 0.25 on the basis of the number of years the parties were married—25.

This limited, arbitrary, and formulaic approach is without any support in the law. It totally fails to consider the unique circumstances of the parties' respective positions and fails to reach an outcome that balances the parties' needs and incomes. In short, we cannot sanction the use of such a blunt tool in any spousal support determination, and the trial court's use of this formula here was an error of law. Given the trial court's use and application of its formula, it is not surprising that it failed to consider the factors relevant to an award of spousal support, aside from the length of the parties' marriage and their relative incomes. Indeed, this formula does not adequately account for many factors that were highly relevant to this proceeding, including the parties' ages, health, abilities to work, needs, previous standard of living, and whether one of them would be supporting a dependent. The trial court considered none of these required factors in the instant proceeding.

Moreover, the trial court clearly erred by imputing to plaintiff an income of $7,000. As noted, the trial court made no explicit finding regarding plaintiff's health or her ability to work, nor did it make any finding that plaintiff had voluntarily reduced her income. The trial judge simply cited excerpts of the deposition of plain-

---

[1] The trial court offered no legal authority in support of this particular formula, and we have found no legal authority that supports such a formula.

tiff's doctor and considered the judge's own personal medical ailments before concluding that plaintiff could work and could earn $7,000 a year. This finding was clearly erroneous. First, parties to a divorce action "are entitled to individual consideration based on the law and facts applicable to their case, not on anecdotal experiences of the trial court." Cf. *Brausch v Brausch*, 283 Mich App 339, 354; 770 NW2d 77 (2009) (applying this principle to a custody action). Thus, the trial judge's comments that despite his own ailments, he planned to work until he was "not able to do anything" and "when you don't have any options and you gotta work, you gotta work," were an entirely irrelevant and inappropriate basis on which to conclude that plaintiff herself had the ability to work. Second, after a review of the deposition of plaintiff's doctor and plaintiff's testimony, it is clear that plaintiff does not have the ability to work or to earn $7,000 a year because of her progressive multiple sclerosis (MS). Plaintiff testified that she could not work and that she suffered numbness in her extremities, blurred vision, clumsiness, confusion, lack of bladder control, chronic fatigue, drowsiness, vertigo, and depression. Plaintiff's doctor, Phillip Green, also testified that plaintiff suffered from weakness, clumsiness, decreased cognition, and confusion and that her condition would worsen over time. According to Dr. Green, plaintiff's intelligence quotient was in the 23d percentile, and her cognitive ability to process information and act on the information was in the 8th percentile. Dr. Green testified that plaintiff was not capable of full-time employment and indicated that part-time employment was "possible . . . but not probable," especially because of the progressive nature of her MS. Further, plaintiff's only work experience is childcare and waitressing—two physically demanding jobs that plaintiff could not reasonably be expected to

perform—and she lacks any valuable job skills that would qualify her for skilled employment. In light of this evidence, and a lack of any evidence that plaintiff voluntarily reduced her income, we have a definite and firm conviction that the trial court made a mistake by concluding that plaintiff had the ability to work and earn an income and by imputing to her a $7,000 income.

We also note, as plaintiff points out, that the trial court erred by failing to consider plaintiff's needs, specifically her health-care costs, and by determining that plaintiff should not be awarded any additional support to cover those costs. Presently, plaintiff pays $383 a month for COBRA benefits. The trial court determined that plaintiff could pay for COBRA from her spousal support and did not award any additional amount to cover her health-care costs. However, in making this determination, the trial court ignored the disparate economic positions of the parties. As noted, plaintiff suffers from a severe physical impairment that will become worse with time, and she has no meaningful work experience, no specialized training, and no real potential to earn any income. In comparison, defendant is healthy, he earns about $62,500 a year (approximately $5,200 a month) in a field in which he has years of experience, and he has a retirement account and health-care coverage for which he pays $41 a month. In consideration of the parties' relative positions and plaintiff's needs, it would not have been inequitable for the trial court to require defendant to maintain plaintiff's health insurance. See *Voukatidis v Voukatidis*, 195 Mich App 338, 339; 489 NW2d 512 (1992). The trial court, however, failed to even address the parties' relative positions. The trial court also overlooked the fact that its spousal support award would not even

cover plaintiff's living expenses.[2] Although the trial court likely expected plaintiff to make up the difference through her separate individual earnings, we have already concluded that the trial court clearly erred by determining that plaintiff had the ability to work and earn an income. Accordingly, on remand, the trial court must specifically consider plaintiff's needs, and specifically her health-related needs, in light of the fact that she has no earning potential and no ability to work.

In summary, an application of the general principles of equity, within the confines of the applicable statute and relevant caselaw, supports a conclusion that plaintiff is entitled to a greater amount of spousal support than the trial court awarded. Plaintiff has no earning ability, has severe health problems, and has significant costs associated with her health care, while defendant is relatively young, in good health, employed, earns a decent salary, and has relatively low living expenses. The trial court's award of spousal support, in light of plaintiff's health condition and earning ability, was deficient and clearly inequitable. On remand, the trial court must consider the relevant factors as they pertain to the parties and make specific findings of fact that justify its ultimate award of spousal support. In doing so, it must keep in mind that its goal is to reach a result that is just and reasonable under the circumstances and that "balance[s] the incomes and needs of the parties in a way that will not impoverish either party." *Moore*, 242 Mich App at 654. Finally, given the statutory mandate of MCL 552.23, we must emphasize that there is no room for the application of any rigid and arbitrary

---

[2] Under the division of property, plaintiff was responsible for half of the marital debt and the marital home's mortgage until the home is sold— approximately $1000 a month. Housing and COBRA alone, totaling $1,383 per month, would cost more than the $1,156 in monthly support that the trial court awarded.

formulas when determining the appropriate amount of spousal support and the trial court on remand must proceed accordingly.

### II. STIPULATION

Next, plaintiff argues that the trial court erred by failing to enforce a stipulation between the parties that required defendant to sell his 1969 Pontiac Firebird and use the proceeds to pay marital debt. We disagree. "A settlement agreement, such as a stipulation and property settlement in a divorce, is construed as a contract." *MacInnes v MacInnes*, 260 Mich App 280, 283; 677 NW2d 889 (2004). The same legal principles that govern the construction and interpretation of contracts govern the parties' purported settlement agreement in a divorce case. *Id.* The existence and interpretation of a contract involves a question of law that this Court reviews de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

Under MCR 2.507(G),

[a]n agreement or consent between the parties or their attorneys respecting the proceedings in an action, subsequently denied by either party, is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

Further,

[i]t is a well-settled principle of law that courts are bound by property settlements reached through negotiations and agreement by parties to a divorce action, in the absence of fraud, duress, mutual mistake, or severe stress which prevented a party from understanding in a reasonable manner the nature and effect of the act in which she was engaged. [*Keyser v Keyser*, 182 Mich App 268, 269-270; 451 NW2d 587 (1990).]

In this case, the record does not support a conclusion that the parties entered into a binding stipulation that required defendant to sell the Firebird to pay the marital debt. Rather, the parties merely agreed that the Firebird would be considered defendant's separate property and that, should defendant decide to sell it, plaintiff would be entitled to receive an accounting of the sale and the proceeds would be applied to the marital debt. Thus, whether to sell the Firebird remained in defendant's sole discretion, and, to plaintiff's detriment, he decided not to sell it. Accordingly, contrary to plaintiff's position, the trial court did not err by adhering to the parties' stipulation and excluding the Firebird from the distribution of the assets.

Further, we note that although plaintiff advances an alternative interpretation of the stipulation, she does not even argue that she entered into the stipulation because of a mutual mistake. Therefore, absent an indication of fraud, duress, or severe stress, the stipulation must be enforced according to its plain terms. Plaintiff does not assert that any of these foregoing circumstances existed, and her interpretation of the stipulation has no support in the record. Her argument on appeal is simply an attempt to avoid the effect of the stipulation and to regain that which she forfeited by agreeing to it: an adjudication of whether the Firebird constituted defendant's separate property and, if so, whether it could be invaded under MCL 552.23. No relief is warranted on this basis.

### III. ATTORNEY FEES

Plaintiff also asserts that the trial court abused its discretion by denying her need-based request for attorney fees. We agree. We review for an abuse of discretion a trial court's decision whether to award attorney fees.

*Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). We review findings of fact for clear error and questions of law de novo. *Stallworth v Stallworth*, 275 Mich App 282, 288; 738 NW2d 264 (2007).

The applicable court rule, MCR 3.206(C)(2)(a), states:

> A party who requests attorney fees and expenses must allege facts sufficient to show that
>
> (a) the party is unable to bear the expense of the action, and that the other party is able to pay . . . .

This Court has interpreted this rule to require an award of attorney fees in a divorce action "only as necessary to enable a party to prosecute or defend a suit." *Gates v Gates*, 256 Mich App 420, 438; 664 NW2d 231 (2003). With respect to a party's ability to prosecute or defend a divorce action, a party "may not be required to invade her assets to satisfy attorney fees when she is relying on the same assets for her support." *Maake v Maake*, 200 Mich App 184, 189; 503 NW2d 664 (1993). Further, a party sufficiently demonstrates an inability to pay attorney fees when that party's yearly income is less than the amount owed in attorney fees. *Stallworth*, 275 Mich App at 288-289.

In this case, the trial court stated that it only awards attorney fees if a party engaged in egregious conduct or wasteful litigation and indicated that plaintiff could use her spousal support to pay her attorney, stating:

> With regard to attorney fees, this Court has never granted attorney fees unless the Court felt that there was an egregious—egregious conduct by [sic] the part of one of the litigants or wastefulness with regard to their actions. I always believe that everyone should, you know, with whatever allocation of assets pay their attorney fees. And so, I'm denying the invitation to assess attorney fees.

This basis for denying plaintiff attorney fees constituted an error of law. See *Maake*, 200 Mich App at 189; *Gates*, 256 Mich App at 438. It was incumbent upon the trial court to consider whether attorney fees were necessary for plaintiff to defend her suit, including whether, under the circumstances, plaintiff would have to invade the same spousal support assets she is relying on to live in order to pay her attorney fees and whether, under the specific circumstances, defendant has the ability to pay or contribute to plaintiff's fees. See *Gates*, 256 Mich App at 438; MCR 3.206(C)(2)(a). Thus, on remand, the trial court must apply the correct legal analysis, giving special consideration to the specific financial situations of the parties and the equities involved. In addition, the trial court must also consider whether plaintiff is entitled to appellate attorney fees pursuant to MCR 3.206(C)(1), applying the same analysis.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.