# STATE OF MICHIGAN

# COURT OF APPEALS

PAULA ANNE DIXON,

   Plaintiff-Appellee,

v

JAMES MATTHEW DIXON,

   Defendant-Appellant.

UNPUBLISHED
September 27, 2018

No. 338960
Oakland Circuit Court
LC No. 2013-808585-DO

---

Before: TUKEL, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

This appeal involves the interpretation of a settlement agreement regarding the payment of spousal support by defendant, James Matthew Dixon, to plaintiff, Paula Anne Dixon. Subsequent to the hearing at which the parties placed their agreement on the record, the parties disagreed on what language accurately memorialized their agreement. On April 13, 2017, the circuit court entered an order granting plaintiff's motion for entry of the order prepared by her attorney. Defendant appeals this decision by leave granted,[1] arguing that the parties' use of the words "all sources" when referencing his annual income in order to calculate the percentage that would be paid to plaintiff in spousal support was ambiguous, and that the trial court should have allowed the use of extrinsic evidence to identify and resolve the ambiguity. We agree. Accordingly, we vacate the circuit court's order of April 13, 2017, and remand the matter for further proceedings.

## I. STATEMENT OF FACTS

The parties were divorced in April 2014 by a consent judgment of divorce (JOD) that, among other things, awarded plaintiff modifiable spousal support of $10,000 per month. Having retired from General Motors, defendant worked as a contract employee for two Japanese firms: Isuzu Motors and Hino. In April 2016, defendant filed a motion to modify his spousal support obligation on the ground that he anticipated a 34% decrease in income earned from consulting contracts in 2016. Because he had completed some of the work for which Hino had hired him,

---

[1] *Dixon v Dixon*, unpublished order of the Court of Appeals, entered November 21, 2017 (Docket No. 338960).

his 2016 contract reflected a significant decrease in compensation. His spousal support obligation was calculated on an annual income of $425,000, but his earnings from contract work in 2016 was going to be $357,650, so he sought a commensurate reduction in his monthly spousal support obligation from $10,000 to $6,600 per month. In her answer to defendant's motion, plaintiff contended that, because defendant was a self-employed consultant with the ability to restrict his income, discovery was necessary to determine defendant's true income before the court modified his spousal support obligation. Subsequently, the parties consented to "informal discovery" and a hearing date of August 1, 2016.

On July 13, 2016, plaintiff filed a motion to enforce the JOD, alleging in relevant part that defendant had unilaterally reduced his support payments in May and June from $10,000 to $6,600 and had failed to make a spousal support payment in July. Because of defendant's arrearages, the friend of the court had set a show cause hearing for August 2, 2016. Plaintiff argued that defendant's support obligation was based on an annual income of $425,000, and that his income for the most recent three tax years (2013-2015) exceeded that amount. Plaintiff observed that defendant "has alleged through counsel that an existing contract will not be renewed in 2017[,]" and contended that defendant's motion to modify spousal support was premature because even if the contract were not renewed in 2017, it did not affect defendant's current income.[2] She noted that as "a self-employed consultant, defendant's income is derived from more than one source, and his gross income cannot be ascertained until the close of the fiscal year." Plaintiff asserted that "because Defendant's predictions are speculative, Defendant's [m]otion to reduce spousal support is premature" and should be dismissed until such time as he can prove that his income has diminished, based on something other than speculation."[3]

In his answer to plaintiff's motion, defendant denied that his anticipated 2016 income was speculative. He stated that two consulting contracts were renewed in March 2016, one of them at a 34% reduction from the prior year's contract. He further stated that because he "has no other form of income but for the two consulting contracts, [he] is able to ascertain his 2016 income." He admitted that spousal support was based on an annual income of $425,000, and that his annual income for 2013 to 2015 exceeded that amount. However, he stated that he saw a $45,559 reduction in income from 2014 to 2015, and that he would earn only $357,650 in 2016

_____

[2] The parties appear to be addressing different issues. Defendant based his motion to modify spousal support on an immediate reduction in his 2016 income attributable to renewal of one of the Hino consulting contracts in March 2016 for less money than in previous years. Plaintiff's motion to enforce the JOD appears based on subsequent information from defendant that in 2017, his Hino contract may not be renewed at all. In the agreement that is the subject of this appeal, the parties agreed to allow defendant to make spousal support payments of $6,600 through March 31, 2017, the date by which defendant would know whether his Hino contract was renewed and, if so, at what rate. The point of the agreement was to address what defendant's support obligation would be after April 1, 2017.

[3] Plaintiff also raised issues related to life insurance and property settlement payment, but they are not relevant to the instant appeal.

"due to his compensation being reduced by approximately 34% with one of his consulting positions." He asserted that his motion was not premature because renewal of the two consulting contracts in March affected his 2016 income, and he asked the circuit court to go forward with the August 1, 2016 hearing on his motion to modify spousal support.

The August 2, 2016 show cause hearing was adjourned until after the court heard argument on defendant's motion to modify spousal support, and the August 1, 2016 hearing on defendant's motion was rescheduled for October 31, 2016. The hearing ultimately occurred in February, 2017.

At the February 10, 2017 hearing, the parties informed the circuit court that they had reached an agreement. Plaintiff's attorney indicated that the agreement was written and initialed by the parties, and he referred to it as "Exhibit A in case there's any issues, but I don't expect any."[4] He then placed the relevant portion of the agreement on the record as follows:

We've agreed as follows: spousal support will be modifiable effective April 1, 2017. From April 1st, 2017 on [defendant] will pay 25 percent of his income up to $150,000 from all sources received after April 1st, 2017. [Defendant] will pay 24 percent of $150,000 and one and up with no cap from all sources.

[Defendant] will continue to pay the interim amount that was ordered by this court in the amount of [$]6,600 a month for the months of February and March. [Defendant] will get -- he's paid by different sources currently. One of them is Isuzu that pays him approximately monthly, the other is Hino, H-I-N-O,

---

[4] Although of somewhat diminished readability due to penmanship, the handwritten agreement states in relevant part:

S/S [spousal support] mod[ified] effective 4/1/17

25% of 1st 150,000
    from all sources rec'd after 4/1/17
24% of 150,001 & up
    (continue 6,600 mo[nthly] until 3/31/17)
    from old sources
Jim gets paid approx. monthly by Isuzu
& quarterly by Hino

Jim will provide Paula both verification of payment received & payment within 7 days of receipt of all income

Jim will provide annually [] within 2 weeks of receipt filing but not later than April 30th verification of annual income including 1099s, W-2s & all State and Fed'l tax returns for purpose of verifying amount paid comports
Shortages to be paid forthwith[.]

which pays him quarterly. [Defendant] will provide [plaintiff] both verification of payment – of received payments and payment of the 25 percent or the 24 percent within seven days of receipt of all of the income.

[Defendant] will provide annually, within two weeks of receipt or filing, whichever is earlier, but not later than April 30th verification of his annual income, including all 1099's, W-2s, state and federal tax returns for purposes of very –verifying the amount that he received and the amount that was paid throughout the year. Shortages, if any, will be paid forthwith. That means as soon as possible.

Counsel then questioned the parties to see if they understood the agreement, plaintiff's attorney agreed to prepare the order, and the hearing concluded.

Reducing the agreement to writing revealed that the parties disagreed on the language necessary to memorialize its terms. Specifically, plaintiff proposed that one provision in the agreement should read, "Effective April 1, 2017, Plaintiff shall receive 25% of the first $150,000 of Defendant's annual income *from all sources* received on or after April 17, 2017." (Emphasis added). Defendant countered with, "Effective April 1, 2017, Plaintiff shall receive 25% of the first $150,000 of Defendant's annual income *earned from any source of employment* received on or after April 17, 2017." (Emphasis added). When the parties could not agree, plaintiff filed a motion for entry of the order she had provided. At the motion hearing, plaintiff argued that her proposed order accurately reflected the agreement placed on the record, which comported with the handwritten agreement, but defendant's proposed language modified the parties' agreement by limiting "all sources" to "earned income." Defendant argued that the two consulting contracts were the only sources of income the parties had discussed throughout discovery and mediation, and he implied that the parties used the phrase "all sources" merely to include any new consulting contracts that defendant might get. The circuit court granted plaintiff's motion, and this appeal followed.

## II. ANALYSIS

Defendant argues on appeal that there exists a latent ambiguity in the agreement because the phrase "all sources," while not ambiguous in itself, is ambiguous when one considers that the parties used the phrase only to refer to defendant's earned income from consulting contracts such as those with Isuzu and Hino. Plaintiff argues that the agreement does not define "all sources of income" and that absent such definition, the phrase means exactly what it says, i.e., income from all sources, without limitation. We construe a settlement agreement in a divorce action in the same manner as a contract, applying the same general principles that govern the interpretation of contracts, and the interpretation of a contract is a question of law that we review de novo. *Myland v Myland*, 290 Mich App 691, 700; 804 NW2d 124 (2010).

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *Shay v Aldrich*, 487 Mich 648, 660; 790 NW2d 629 (2010) (quotation marks and citation omitted). If the language of a contract is unambiguous, courts interpret the language according to its plain meaning. *Id*. The parol evidence rule prohibits reliance on extrinsic evidence to interpret an unambiguous contract. *Id*. at 667. If contractual language is ambiguous,

however, "courts may consider extrinsic evidence to determine the intent of the parties." *Id*. at 660.

That the parties used "all sources" and "income" ambiguously is evident in the hearing at which the parties placed their agreement on the record and the handwritten note that plaintiff indicated was controlling. The agreement placed on the record requires defendant to "pay 25 percent of his income up to $150,000 from all sources received after April 1st 2017" and "24 percent of $150,000 and one up with no cap from all sources." Taken in isolation, nothing in the plain language of these sentences contradicts plaintiff's interpretation of "all sources" as unlimited.[5] However, the controlling handwritten agreement indicates that until March 31, 2017, defendant will pay plaintiff $6,600 "from old sources." In addition, the observation by plaintiff's attorney during his recitation of the parties' agreement that defendant is "paid by different sources currently. One of them is Isuzu . . .and the other is Hino" appears to limit "sources" to earned income sources, i.e., the consulting contracts under which defendant is currently paid. Viewed slightly differently, the observation, viewed in context, could be construed to mean all sources of income from any and all consulting contracts, allowing for the possibility of new contracts.

Plaintiff claims that defendant's response to her attorney's question at the motion hearing after the agreement was placed on the record was an acknowledgement that his spousal support obligation will be based on all originating points of income, whether from consulting work or from investments, pensions, and annuities. We disagree. Defendant answered affirmatively when plaintiff's attorney asked if he understood "that this 25 percent continues – or 24 percent continues on income into the future, whether it's from Isuzu, Hino or some other source." Given that plaintiff had earlier identified defendant's sources of income as Isuzu and Hino, and considering that the parties' motions, answers, and pre-trial briefs focused on defendant's contracting income, there is no reason to view defendant's response as an affirmative acknowledgement that "some other source" referred to categories of income different from that earned by his consulting work.[6]

---

[5] The sentence "From April 1st, 2017 on [defendant] will pay 25 percent of his income up to $150,000 from all sources received after April 1st, 2017" arguably is syntactically ambiguous. That is, its structure allows for different meanings depending on what is "received": income, sources, or both.

[6] At the hearing, the following exchange with plaintiff illustrates this point:

Defendant's attorney: You understand this negotiation has to deal with his contract is being modified by Hino over the next 30 days. It was already modified this year, so there's no anticipation of whether it's going to be a lot of money, a little money or none whatsoever at this point, you understand that? We don't know what the Hino income will be?

Plaintiff: That's always been true from the judgment of divorce.

Plaintiff maintains that the court properly interpreted the agreement according to its plain language without considering extrinsic evidence. She insists that the meaning of "all sources" is unambiguous as it appears in the Settlement Agreement, and that a word is not ambiguous simply because it can be defined in different ways. Once again, however, this argument ignores the fact that in the writing and when placing the agreement on the record, the parties used "sources" to refer to income earned from contract work, not that earned from investments; at best, they used the term ambiguously.[7]

Plaintiff further argues that even if the circuit court could have considered extrinsic evidence, defendant did not offer any evidence to define the term "all sources." While it is true that defendant did not produce a document in which the parties expressly agreed that "all sources" referred exclusively to defendant's earned income, it is equally true that, considering the writing and the parties' comments when placing their agreement on the record, it is clear the parties used the term to refer to earned income. The hearing transcript itself, as well as the handwritten note outlining the parties' agreement, establishes an ambiguity in the parties' use of "all sources" that became known when plaintiff reduced the agreement to writing for entry as an order. Because the record establishes that the parties' use of "all sources" and "income" was ambiguous, the circuit court should have considered extrinsic evidence to determine the parties' intent.

We vacate the circuit court's order of April 13, 2017, and remand the matter for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro

---

[7] For example, the writing refers to "all sources" and to "old sources," with the latter clearly indicating defendant's consulting contracts, and plaintiff stated on the record that defendant's sources of income are the Isuzu and Hino contracts.