*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DENNIS WEAVER,

        Plaintiff-Appellee,

v

KIMBERLY KRACKE, formerly known as
KIMBERLY WEAVER,

        Defendant-Appellant.

UNPUBLISHED
August 26, 2021

No. 353251
Alger Circuit Court
Family Division
LC No. 18-007810-DO

Before: RONAYNE KRAUSE, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

In this domestic relations action, defendant, Kimberly Kracke, appeals as of right the trial court's judgment of divorce. On appeal, defendant challenges the division of property as well as the spousal support award. We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

Defendant met plaintiff, Dennis Weaver, in North Carolina in 2007. They eventually married and moved to Grand Marais, Michigan. In Grand Marais, the parties opened a store, Grand Marais Outfitters, that specialized in the sale and rental of apparel and equipment for local outdoor activities. The store was located within a building that defendant had purchased before the marriage. The parties lived in a loft above the business and eventually purchased a separate house in town. The parties intended to live in the house and rent out the loft to tourists. Defendant left a high paying job in medical sales because of the hardships involved with regularly traveling out of Grand Marais. Plaintiff retired after 20 years of service in the military before relocating to Grand Marais. He occasionally performed lucrative independent contract work for the Department of Defense. After the relocation, the parties' relationship began to deteriorate. Defendant

struggled with alcoholism, and plaintiff developed a friendship with another woman that turned into a romantic relationship.[1]  Plaintiff eventually separated from defendant and filed for divorce.

As relevant to this appeal, the judgment of divorce stated that a spousal support award was not appropriate unless plaintiff engaged in independent contracting work with the government. The order noted that such work appeared to be unlikely, but explained that plaintiff's acceptance of "contracting work would result in enough of a disparity of income between the parties to warrant some adjustment."  Accordingly, the judgment required that plaintiff account for any contracting work accepted after entry of the divorce on October 10, 2019, until December 31, 2024.  The judgment calculated alimony on the following sliding scale:

> 25 percent from 10/10/2019 through the end of 2021, 20 percent from 01/01/2022 through the end of 2022, 15 percent from 01/01/2023 through the end of 2023, and 10 percent from 01/01/2024 through the end of 2024. If the Plaintiff never again engages in independent contracting working [sic] or does not engage in any independent contracting work until 2025 he will not be required to pay anything as spousal support.

The trial court awarded defendant the marital home, as well as the building in which the store and loft were located.  The trial court initially awarded the gun safe used at the store to defendant. However, on reconsideration, the trial court determined that the gun safe was the non-marital property of plaintiff that should be retained by him.  Defendant now appeals as of right.

## II.  DISCUSSION

### A.  SPOUSAL SUPPORT

Defendant first argues that the trial court abused its discretion by conditioning defendant's entitlement to spousal support on whether plaintiff chooses to engage in contract work for the Department of Defense.  Defendant also asserts that the trial court clearly erred with respect to several factual findings underlying its spousal support award.  We disagree.

"[W]e review a spousal support award for an abuse of discretion."  *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012).  "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes."  *Id*. at 26 (quotation marks and citation omitted).  The trial court's factual findings are reviewed for clear error, and "[a] finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made."  *Id*.  If we conclude that a clear error has not occurred, then we "must determine whether the dispositional ruling was fair and equitable under the

---

[1] Whether the relationship became romantic before or after plaintiff filed for divorce has been heavily disputed.  However, the trial court found credible plaintiff's statement that they were only friends prior to his filing for divorce.

circumstances of the case" and "must affirm the trial court's dispositional ruling unless we are convinced that it was inequitable." *Id.*

"The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case." *Berger v Berger*, 277 Mich App 700, 726; 747 NW2d 336 (2008). To that end, MCL 552.23(1) provides:

> Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

"Spousal support does not follow a strict formula." *Loutts*, 298 Mich App at 30. In deciding whether to award spousal support, trial courts should consider the following factors:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003).]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010) (quotation marks and citation omitted).

Defendant challenges the court's findings under several of these factors. First, defendant argues that it was erroneous for the trial court to find that defendant was equally capable of working even though it made "repeated references to [her] substance abuse issues and their interference with her ability to work;" however, the trial court never insinuated that alcohol abuse was preventing defendant from being able to work, and defendant never testified to that effect. On appeal, defendant asserts that, because of her alcoholism, she suffered from a medical disability and that the trial court erred by failing to find that she was disabled and give that finding substantial weight. However, the record contains no evidence that defendant suffered from a disability or that this disability precluded her from working or renting her properties. In fact, defendant testified that she planned to keep the store open, and that she was "completely ready" to rent out the loft for her income. Moreover, she indicated that her alcoholism had been successfully treated. Therefore, considering defendant's own testimony, the trial court's finding that she was equally capable of working was not clearly erroneous.

Defendant next contends that she needed spousal support to cover her medical and health insurance expenses. However, because there was evidence that the store was profitable and that defendant could make money renting either her house or the loft, the trial court did not clearly err by finding that defendant could generate enough money to pay for her health care. Defendant also argues that the trial court erred by ordering defendant to liquidate her assets in order to support herself, but this characterization does not accurately reflect the trial court's order. It was clearly the intent of the court to convey that defendant, if she chose to remain in Grand Marais, would be able to support herself from revenue obtained by operating the store and renting at least one of her residences. On the other hand, the trial court explained that if defendant no longer wished to remain in Grand Marais, "she should liquidate her assets and leave." Defendant additionally contends that the trial court clearly erred by failing to consider her alcohol addiction as a health concern rather than a moral failing. However, defendant testified that she had a sponsor, that she was attending Alcoholics Anonymous meetings twice a week, and that she was confident that she could remain sober moving forward.

Defendant also contends that the trial court clearly erred by failing to find plaintiff to be at fault for the breakdown of the relationship because of his alleged affair. However, plaintiff testified that he did not have a romantic relationship until after he filed for divorce, and the trial court found this testimony credible. We defer to the trial court's findings concerning credibility. *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020). Further, the trial court explained that although it found defendant's behavior was slightly more responsible for the breakdown of the marriage, "the exact percentage of fault [was] not important to its ultimate decision on the issue of alimony."

Lastly, defendant contends that the trial court abused its discretion by failing to impute income to plaintiff for purposes of spousal support because he had the ability to earn a substantial amount of money through government contract work and had a history of doing so. The trial court may impute income to a party under certain circumstances, such as when "a party has voluntarily reduced the party's income . . . ." *Moore v Moore*, 242 Mich App 652, 655; 619 NW2d 723 (2000). The trial court acknowledged plaintiff's earning potential and accordingly ordered that a percentage of any contracting revenue made by plaintiff be paid to defendant for the next several years. Notably, plaintiff testified at trial that the contract jobs were very demanding and that they required him to work long hours away from home for several weeks at a time. As a retiree from the military, he testified that he did not desire to continue to do the amount of work these optional contracts demanded. Therefore, the trial court's decision not to impute income to the work so as to render it essentially an obligation, and instead to condition spousal support payments on whether plaintiff chose to accept contract work was not "outside the range of reasonable and principled outcomes."[2] *Loutts*, 298 Mich App at 26.

---

[2] Although defendant contended at oral argument that the trial court's ruling creates a disincentive for plaintiff to take on the extra work, he would also be depriving himself of the extra income.

## B. PROPERTY DIVISION

Next, defendant makes several arguments that pertain to the division of property. We agree that the trial court erred by awarding the gun safe used at the store to plaintiff; however, we affirm the judgment of divorce in all other respects.

"This Court reviews a property distribution in a divorce case by first reviewing the trial court's factual findings for clear error, and then determining whether the dispositional ruling was fair and equitable in light of the facts." *Olson*, 256 Mich App at 622.

Defendant first argues that the trial court erred by failing to order plaintiff to reimburse her for damage caused to the marital home while he had exclusive access to the home. However, defendant presented the court with no basis upon which to find that any of the damage was the result of intentional action or negligence on the part of plaintiff. The trial court specifically determined that "many of the areas complained of existed at the time that the parties purchased the home, or were the result of ordinary wear and tear," and declined to award any reimbursement. Defendant has failed to establish that this finding was clear error.

Defendant also asserts that the trial court erred by failing to award money for lost rental payments caused by plaintiff's delay in delivering a deed to the house. Given the court's finding that defendant was able to rent out the house without having a deed, it was fair and equitable to deny this request. Moreover, defendant contends that the trial court erred by failing to require that plaintiff reimburse her for the value of her personal property that she alleges went missing during his exclusive use of the marital home. However, plaintiff denied removing the property or having knowledge of its whereabouts, and the trial court was not convinced that he was being untruthful. Given that this Court defers to the trial court's credibility findings, this finding was not clearly erroneous. *Pederson*, 331 Mich App at 472.

Further, defendant submits that the trial court erred by awarding a gun safe to plaintiff. We agree that the court erred by finding that the gun safe was plaintiff's separate property and accordingly remand this case for the court to distribute the gun safe as a marital asset.

Prior to dividing assets, the trial court must determine what is marital property and what is separate property. *Cunningham v Cunningham*, 289 Mich App 195, 200-201; 795 NW2d 826 (2010). "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Id*. at 201, citing MCL 552.19. In general, "when the marital estate is divided each party takes away from the marriage that party's own separate estate with no invasion by the other party." *Id*. (quotation marks and citation omitted). The marital property is then apportioned "between the parties in a manner that is equitable in light of all the circumstances." *Id*.

The trial court initially awarded the gun safe to defendant in its October 11, 2019, opinion containing its findings related to the divorce. Both parties moved for reconsideration. As pertinent to this appeal, plaintiff requested that the trial court "reconsider its decision to award the gun safe to the Defendant inasmuch as the testimony from both parties indicated that it was a premarital asset purchased separately by the Plaintiff before the parties were married." In the order

concerning the parties' motions for reconsideration, the trial court made the following findings concerning the gun safe:

> The Court had the impression at trial that the gun safe used by the GMO [Grand Marais Outfitters] was Mr. Weaver's and purchased during the marriage. If that is accurate the gun safe would be part of the marital estate and subject to being awarded to Mrs. Weaver, consistent with the 10/10 opinion.
>
> The Court had attempted to use a common sense approach to the award of personal property and limit connections between Mr. Weaver and the GMO. It was reasonable and appropriate to award Mrs. Weaver Mr. Weaver's gun safe under those circumstances. If, however, the gun safe was Mr. Weaver's property prior to the marriage the Court determines that is [sic] should be returned to him as a non-marital asset. That is what we had attempted to do with all non-marital assets. Despite the historic inability of the parties to agree on virtually anything, the Court is confident that they will be able to work with counsel to determine when Mr. Weaver purchased the gun safe and thereby who will have it moving forward. However, in order to provide a definitive final ruling the Court determines that the gun safe was non-marital property of Mr. Weaver and should be retained by him.

In accordance with the order on reconsideration, the judgment of divorce awarded the gun safe located within the store to plaintiff. However, plaintiff's own testimony does not support the contention that he purchased the safe before the marriage.[3] Plaintiff testified that, while he considered it to be his gun safe, the parties jointly acquired it after they were married. Because it was acquired after the marriage, the gun safe was marital property, and the trial court committed a clear error by finding otherwise. *Id*.

We vacate the circuit court's decision to award the gun safe to plaintiff and affirm the remaining provisions of the judgment of divorce. This case is remanded to the circuit court for the limited purpose of rendering a proper division of the gun safe as part of the marital estate. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Jane M. Beckering
/s/ Mark T. Boonstra

---

[3] Plaintiff testified that he and defendant purchased the gun safe while they were living in North Carolina after they were married.