*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANNE FITZGERALD HAAN,

      Plaintiff-Appellee,

v

GERALD ARTHUR HAAN,

      Defendant-Appellant.

UNPUBLISHED
October 07, 2024
10:33 AM

Nos. 364875; 365830
Emmet Circuit Court
Family Division
LC No. 2021-107381-DO

Before: CAMERON, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

In these consolidated appeals,[1] in Docket No. 364875, defendant appeals by right the trial court's judgment of divorce entered after a bench trial. In Docket No. 365830, defendant appeals by right a postjudgment order that required him to pay $25,000 toward plaintiff's appellate attorney fees. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The parties were married in May 2008 and plaintiff filed for divorce in August 2021. They had a prenuptial agreement ("PA") specifying that the parties' respective assets would remain separate and that, if a divorce occurred after five years of marriage, plaintiff would receive a total of $180,000 in spousal support ($45,000 a year for 4 years). Defendant had a net worth of $3.6 million at the time of the marriage and a net worth of $10 million at the time of the divorce. Plaintiff's net worth at the time of the marriage was approximately $220,000, and the court determined that her net worth at the time of the divorce was $537,000.

The court concluded that, despite the language of the PA, an invasion into defendant's separate property for an award to plaintiff was warranted in light of caselaw, statutory law, and

---

[1] The Court consolidated the cases to "advance the efficient administration of justice." *Haan v Haan*, unpublished order of the Court of Appeals, entered May 3, 2023 (Docket Nos. 364875 & 365830).

principles of equity. Therefore, the court awarded plaintiff $1.5 million on the basis that her assistance in running the family home and caring for the couple's blended family—plaintiff had three children from a prior marriage and defendant had sole custody of two children from a prior marriage—enabled defendant to run successful businesses and earn close to $1 million a year in income. At a postjudgment hearing, the trial court also ordered defendant to pay plaintiff's $25,000 legal retainer for the instant appellate proceedings. This appeal followed.

## II. STANDARDS OF REVIEW

"In a divorce action, this Court reviews for clear error a trial court's factual findings on the division of marital property and whether a particular asset qualifies as marital or separate property." *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014). A finding of fact is clearly erroneous "when this Court is left with the definite and firm conviction that a mistake has been made." *Id*. at 555 (quotation marks and citation omitted). "This Court further reviews whether a trial court's dispositional rulings are fair and equitable in light of the trial court's findings of fact, but this Court will reverse only if definitely and firmly convinced that the disposition is inequitable." *Id*. (quotation marks and citation omitted).

This Court reviews de novo issues of contract interpretation. *Id*. at 558. And this Court "review[s] for an abuse of discretion a trial court's decision whether to award attorney fees." *Myland v Myland*, 290 Mich App 691, 701; 804 NW2d 124 (2010). "A trial court abuses its discretion when its decision is outside the range of reasonable and principled outcomes." *Newman v Real Time Resolutions, Inc*, 342 Mich App 405, 411; 994 NW2d 852 (2022).

## III. PROPERTY SETTLEMENT

On appeal, defendant argues that the trial court clearly erred when it awarded plaintiff $1.5 million because the court did not have the authority to rewrite the PA and invade defendant's assets. We disagree.

The trial court relied on MCL 552.401 to justify deviating from the terms of the PA and awarding plaintiff $1.5 million, which states:

> The circuit court of this state may include in any decree of divorce or of separate maintenance entered in the circuit court appropriate provisions awarding to a party all or a portion of the property, either real or personal, owned by his or her spouse, as appears to the court to be equitable under all the circumstances of the case, if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property. The decree, upon becoming final, shall have the same force and effect as a quitclaim deed of the real estate, if any, or a bill of sale of the personal property, if any, given by the party's spouse to the party. [MCL 552.401.]

In *Allard v Allard (On Remand)*, 318 Mich App 583, 587; 899 NW2d 420 (2017), we "conclude[d] that parties cannot, by antenuptial agreement, deprive a trial court of its equitable

discretion under MCL 552.23(1)[2] and MCL 552.401." The trial court in *Allard* concluded that allowing those statutes to countermand provisions of a PA would "jeopardize[]" "the right to freely contract[.]" *Id*. at 592. We disagreed, stating that it is well settled that divorce cases are equitable in nature and that the Legislature codified the principle that a property division must be equitable in light of the circumstances of the case. *Id*. at 596-598. The Court stated that "the Legislature intend[ed] circuit courts, when ordering a property division in a divorce matter, to have equitable discretion to invade separate assets if doing so is necessary to achieve equity." *Id*. at 601. We continued:

> Moreover, to the extent that parties attempt, by contract, to bind the equitable authority granted to a circuit court under MCL 552.23(1) and MCL 552.401, any such agreement is necessarily void as against both statute and the public policy codified by our Legislature. Put differently, the parties to a divorce cannot, through antenuptial agreement, compel a court of equity to order a property settlement that is *in* equitable [sic]. Although parties have a fundamental right to contract as they see fit, they have no right to do so in direct contravention of this state's laws and public policy. [*Id*.]

Thus, we concluded that the "parties could not, and therefore did not, waive the trial court's equitable discretion under MCL 552.23(1) and MCL 552.401." *Id*. at 603.

Defendant argues, however, that what is "equitable" must be determined by referring solely to the PA, but this argument is in direct conflict with *Allard* and is, therefore, unpersuasive. Rather than the PA, ultimately it is the statute that controls the outcome of this case. Defendant also argues that there was insufficient evidence that plaintiff contributed to the acquisition, improvement, or accumulation of his property, such that MCL 552.401 was not applicable. In *Hanaway v Hanaway*, 208 Mich App 278, 288, 290; 527 NW2d 792 (1995), the trial court addressed whether the plaintiff in a divorce should receive part of company stock given to the defendant by the defendant's father. The trial court concluded that the company stock was a gift and that the plaintiff did not contribute to its acquisition, improvement, or accumulation of the assets; therefore, the plaintiff was to receive no part of it in the property settlement. *Id*. at 290.

On appeal, this Court reversed, stating:

---

[2] This statute states:

> Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case. [MCL 552.23(1).]

-3-

We are unable to agree with the [lower] court that [the] plaintiff made no contribution to the company's assets or appreciation. The trial testimony indicates that [the] plaintiff administered the household physically and financially and cared for the children until late in the marriage, while [the] defendant, the company president, devoted himself to the business, working long work weeks. The business clearly prospered during the marriage. While the source of [the] defendant's interest in the company was his father's annual gifts of stock, the financial yield over time from that interest and the increased value of that interest necessarily reflected [the] defendant's investment of time and effort in maintaining and increasing the business, an investment that was facilitated by [the] plaintiff's long-term commitment to remain at home to run the household and care for the children.

Although initially given to [the] defendant by his father, the interest in the business was a major asset of the marriage that [the] defendant was permitted to cultivate and nurture over the years. It is inequitable to deprive [the] plaintiff of any share of the business or its value on the basis that she enjoyed the benefits of defendant's salary over the years. The fruits of [the] defendant's efforts in the business were both the increase in the value of the business since 1968 and the salary he drew over the years. The parties were building an asset as well as enjoying its fruits on an ongoing basis. That [the] plaintiff's contribution to the asset came in the form of household and family services is irrelevant. The marriage was a partnership. [*Id.* at 293-294.]

The Court set forth the remedy as follows:

We thus conclude that, viewed from the standpoint of whether [the] plaintiff contributed to the acquisition, improvement, or accumulation of the property, or from the standpoint of whether the property appreciated in value during the marriage, . . . the trial court erred in treating Steel Tex as [the] defendant's sole and separate property. Accordingly, we reverse the trial court's judgment with regard to this issue, and remand with instructions to award [the] plaintiff an equitable share of the business. We note that the court need not award [the] plaintiff stock in the business, and may award a sum of money or other assets out of the marital estate representing her equitable share of the business. [*Id.* at 294-295.]

Similar to the plaintiff in *Hanaway*, plaintiff was the household's "housekeeper, a nanny, a cook, [and] a Halloween person." She said that she took over the role of mother to defendant's children. Plaintiff said that she almost always attended the sporting games for defendant's children when they were younger and that defendant rarely did. She also took them to practices and other functions because defendant spent most of his time working. Plaintiff took the children to medical appointments and various classes such as music classes. Plaintiff averred that defendant attended very few of the children's events and activities. Defendant's mother also lived nearby, and plaintiff saw her several times a week and took her to doctor's appointments and on shopping trips.

Plaintiff also testified that she helped to start Haan Development, defendant's company. Eventually, she and defendant decided that she should "stay home" instead of working at Haan Development because, in part, she was taking care of five children and the house. Defendant was

-4-

paid a salary from Haan Development, and there was evidence that for many recent years, his income was well over $1 million a year. He admitted that his income and his "rate of return that [he was] making on [his] $7.6 million dollars of corporate assets" was based on his work efforts and stated that he worked 65 to 70 hours a week after the marriage.

Defendant admitted at trial that plaintiff had been a good stepmother and had done things to help his children. Defendant's daughter, for example, had written in her senior-year high-school yearbook, addressed to plaintiff, "[Y]ou're the best mom a girl could ever ask for" and "Thank you for always being there for me, and doing [sic] above and beyond what I could ever imagine. I will always be grateful for all the love and support you have given me over these past four years." Defendant admitted having written an e-mail to plaintiff in which he stated: "All of our children love you. You are a fabulous mother and care-giver. You have created our family. You have steered us all through the past fifteen years, which is most of their lives." And he wrote to plaintiff in December 2021 that she had been an "angel" to his mother and that "we all benefitted from your generous gift of time" to her, which would "never be forgotten or discounted."

Sue Green became friends with plaintiff because their children went to school together from 2007 to 2011. Green said that the day she met plaintiff, plaintiff told her that she had "five children." Green said that when she spent time with plaintiff, plaintiff would have all five children with her. Green did not think it was "at all" accurate that defendant was the primary caregiver for his children. Green said that plaintiff was "a fabulous mother" and took care of the five children. Likewise, Kelsey Coveyou was the family's nanny for "three or four years" after plaintiff and defendant were married. Coveyou said that typically she would "babysit or nanny" when both plaintiff and defendant were out of town. She did not take the children to sporting events very often, and she said that she "[n]ever" took them to doctor's appointments, which was handled by plaintiff. Coveyou opined that plaintiff was the primary caregiver for all five children and that defendant was out of town a lot "for business."

The totality of this evidence, viewed in the context of MCL 552.401, *Allard*, and *Hanaway*, supported the trial court's property award. Although defendant's children did not live in the marital home for a particularly long time, plaintiff continued to provide support for them while they were in boarding school and college, and she assisted with the household and took care of holiday celebrations. She also looked after defendant's elderly mother. Defendant contends that the trial court's award was improper because the court needed to determine precisely how much plaintiff helped to grow Haan Development in particular, but under *Hanaway*, 208 Mich App at 295, the award merely needs to be "equitable[.]" Defendant earned a very large yearly salary and presumably will continue to do so into the future. His net worth increased by many millions of dollars during the marriage. While some of this was the result of inheritances, it is obvious that his work efforts and long work hours contributed substantially to his favorable financial position. Thus, the trial court did not clearly err when it awarded plaintiff $1.5 million because such an award was not inequitable under the circumstances.

## IV. MARITAL HOME

Next, defendant argues that the trial court clearly erred when it ignored the terms of the parties' joint operating agreement ("JOA"), in which the parties agreed that if their house was sold, defendant would receive back what he contributed to the home. We disagree.

The court split the proceeds from the marital home equally between the parties. The JOA, in ¶¶ 3 and 4, states what would occur with the marital home upon the death of plaintiff or defendant and indicates that the heirs of plaintiff or defendant would get plaintiff's or defendant's respective separate contributions, plus one-half of the net equity. In ¶ 5, the JOA states:

> Upon the death of the survivor of Bila [i.e., plaintiff] or Haan [i.e., defendant], or upon the sale of the Property prior to such time, the Net Equity shall be based upon the actual sale price of the property and the amounts determined in accordance with subparagraphs 3 and 4 above shall be paid to the personal representative, heirs, successors or assigns of Haan and of Bila.

For its part, the PA refers to the JOA and states: "This Agreement contains the entire understanding of the parties, except for a separate Joint Ownership Agreement for the residence at 564 Arbor Street, Harbor Springs, Michigan." The JOA, however, does not mention divorce. The trial court concluded that ¶ 5 of the JOA simply was not applicable in the present circumstances because neither plaintiff nor defendant had died. Accordingly, it divided the house proceeds equally.

> When a court interprets a contract, the entire contract must be read and construed as a whole. All the parts must be harmonized as much as possible, and each word of the contract must be given effect, if possible. Also, courts may not change or rewrite plain and unambiguous language in a contract under the guise of interpretation because the parties must live by the words of their agreement. [*Smith v Smith*, 292 Mich App 699, 702; 823 NW2d 114 (2011) (quotation marks and citations omitted).]

When the JOA is read as a whole, it is clear that ¶ 5 does not apply in the context of a divorce occurring while both parties are still alive. This harmonizes the provision in ¶ 5 for payment to heirs or other successors. The phrase "upon the sale of the Property prior to such time" refers to a situation in which the property is sold and either plaintiff or defendant is deceased. Defendant attempts to rely on witness testimony to establish that the JOA was supposed to apply to a sale occurring while both parties were still alive, but parol evidence cannot be used to vary the terms of an otherwise unambiguous contract. See *Hamade v Sunoco, Inc (R&M)*, 271 Mich App 145, 166; 721 NW2d 233 (2006).

Defendant also notes that the general rule under the common law is that separate property brought to a marriage remains separate. See *Reeves v Reeves*, 226 Mich App 490, 494; 575 NW2d 1 (1997) ("Generally, the marital estate is divided between the parties, and each party takes away from the marriage that party's own separate estate with no invasion by the other party."). He contends, therefore, that each party must obtain what he or she contributed out of separate, premarital funds to the home. But under ¶ 1 of the JOA, the parties agreed "to change ownership of the real property at 564 Arbor Street, Harbor Springs, Michigan (the 'Property') to ownership as tenants in common and not as joint tenants, granting to each party and [sic] undivided one-half (1/2) interest." It is not in dispute that the JOA was signed before the marriage.

This language was sufficient evidence of a commingling of plaintiff's lower contribution with defendant's greater contribution such that the trial court did not clearly err by treating the

entire home as marital property. See, e.g., *Cunningham v Cunningham*, 289 Mich App 195, 208; 795 NW2d 826 (2010) ("Although the award of workers' compensation benefits derived from litigation predating the parties' marriage, and a portion of it is theoretically traceable as defendant's separate property, defendant's actions after receiving the funds established that he intended to contribute $90,000 of those funds to the marital purpose of acquiring a new home."). While the JOA sets forth what to do with the property upon the death of either of the parties, it does not similarly do so for divorce. Thus, the trial court's determination that the home was marital property for purposes of the divorce action was not clearly erroneous. See *Hodge*, 303 Mich App at 554.

## V. APPELLATE ATTORNEY FEES

Lastly, defendant argues that the trial court abused its discretion when it awarded plaintiff $25,000 to pay for her appellate attorney's fees. We disagree.

"[A]n award of attorney fees in a divorce action [is required] only as necessary to enable a party to prosecute or defend a suit." *Myland*, 290 Mich App at 702 (quotation marks and citation omitted). "With respect to a party's ability to prosecute or defend a divorce action, a party may not be required to invade her assets to satisfy attorney fees when she is relying on the same assets for her support." *Id.* (quotation marks and citation omitted). "Further, a party sufficiently demonstrates an inability to pay attorney fees when that party's yearly income is less than the amount owed in attorney fees." *Id.*

Concerning domestic relations cases, MCR 3.206(D) states:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.
>
> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that:
>
> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or
>
> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

And in *Reed v Reed*, 265 Mich App 131, 165-166; 693 NW2d 82 (2005), the Court stated:

> The party requesting attorney fees bears the burden of proving they were incurred, and that they are reasonable. When requested attorney fees are contested, it is incumbent on the trial court to conduct a hearing to determine what services were actually rendered, and the reasonableness of those services. The trial court may not award attorney fees, as apparently occurred here, solely on the basis of what it perceives to be fair or on equitable principles. [Citations omitted.]

Defendant contends that the trial court erred by awarding the $25,000 because no testimony or evidence was presented about this figure and no reasonableness analysis was conducted. This contention is without merit. First, defendant's attorney admitted that $25,000 was what plaintiff had paid for the retainer. Second, and most importantly, the court noted that it would entertain further proceedings on the reasonableness of the appellate fees at a later date. At the hearing to determine the reasonableness of the fees, the trial court will be able to address defendant's arguments, if necessary, concerning the reasonableness of the fees and plaintiff's ability to pay. See MCR 3.206(D)(2).

Affirmed. Plaintiff, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett