*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GREGORY ALLEN CSERCSE,

        Plaintiff/Counterdefendant-
        Appellant,

v

SHARON ANN CSERCSE,

        Defendant/Counterplaintiff-
        Appellee.

UNPUBLISHED
March 19, 2019

No. 342902
Gladwin Circuit Court
LC No. 17-008899-DO

Before: STEPHENS, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

Gregory and Sharon Csercse lived together for several years before marrying on June 11, 2014, and finally separating in 2017. Gregory challenges the trial court's decision to award spousal support to Sharon following their short marriage and the calculation of his income in doing so. Gregory further contests the court's division of a personal injury settlement awarded during the marriage and the court's order that he pay over $9,000 of Sharon's attorney fees. We affirm.

## I. BACKGROUND

The parties had a rocky relationship. Sharon accused Gregory of emotional abuse, of repeatedly evicting her from the couple's home, and of controlling her by limiting her access to transportation and money. Mutual friends and Gregory's own employees corroborated Sharon's allegations. Sharon worked for Gregory's business during their relationship and therefore was left without a job upon the couple's separation. Sharon also claimed to suffer from a number of physical ailments that limited her employability.

Taking into account Gregory's fault in the disintegration of the marriage and the needs and abilities of the parties, the court awarded Sharon $1,000 in monthly spousal support for two years. The court awarded each party the personal property in their possession, which left Sharon with little to her name and a nonfunctional motor vehicle. The court also awarded Sharon $2,600

from a lawsuit settlement for a personal injury suffered by Gregory during the marriage. And the court ordered Gregory to pay $9,027.07 to cover Sharon's attorney fees.

## II. SPOUSAL SUPPORT

On appeal, Gregory challenges the court's decision to award spousal support given the brevity of the parties' marriage and the court's calculation of his income in determining the spousal support amount. "Whether to award spousal support is in the trial court's discretion" and we must affirm that decision "unless we are firmly convinced that it was inequitable." *Gates v Gates*, 256 Mich App 420, 432-433; 664 NW2d 231 (2003. The decision to award spousal support is fact-intensive and must be considered on a case-by-case basis to determine "what is just and reasonable under the circumstances of the case." *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012) (cleaned up).[1] We review the trial court's underlying factual findings for clear error. *Richards v Richards*, 310 Mich App 683, 690; 874 NW2d 704 (2015). "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Id*.

The purpose of spousal support is to "balance the incomes and needs of the parties in a way that will not impoverish either party" based on that which is "just and reasonable under the circumstances of the case." *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010). To assist the analysis, this Court has enumerated several factors for a court to consider:

> Factors to be considered are (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, and (12) general principles of equity. In addition, the court may consider a party's fault in causing the divorce. [*Thames v Thames*, 191 Mich App 299, 308; 477 NW2d 496 (1991) (cleaned up).]

"[T]he effect of cohabitation on a party's financial status" is also relevant. *Berger v Berger*, 277 Mich App 700, 727; 747 NW2d 336 (2008). The trial court should make specific findings of fact for factors that are relevant to the case. *Myland*, 290 Mich App at 695.

Gregory first contends that the trial court erroneously found that the parties were married for six years and based the spousal support award on that incorrect figure. However, the court

---

[1] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

expressly conceded its error on the record and corrected it. The court then noted that the short duration of the marriage weighed against the award of spousal support. The length of the marriage was only one factor of many to consider, however, and the trial court found that several other relevant factors weighed in favor of a spousal support award.

Gregory challenges the trial court's finding on other spousal support factors as well. He contends that the trial court erroneously determined that Sharon was unable to work due to her health. The trial court actually found that Sharon should be able to work at least part-time and if not, that she should apply for disability benefits. The court further noted that Sharon was then only unemployed because she had previously worked for Gregory's business (without separate compensation) and could not continue that employment given the relationship status. Sharon had experienced difficulty in finding new employment because Gregory gave her a nonworking vehicle. The court further noted that Sharon's education level limited her job prospects and that she allegedly suffered from health complications that prevented strenuous labor. Specifically, Sharon testified that she had Crohn's disease, fibromyalgia, scoliosis, spinal stenosis, and five bulging discs. While only the Crohn's diagnosis was corroborated at trial, the court did not actually find that Sharon suffered from these conditions or that they prevented her from working. Rather, the court simply noted that Sharon was not working and suggested that if Sharon could prove her inability to work, she should apply for disability benefits. In the meantime, however, Gregory was gainfully employed and there was no obstacle to his continued employment, supporting that he had less need and greater ability to provide spousal support for Sharon for a limited time.

Regarding the source and amount of property awarded, Gregory argues that the trial court failed to value the property awarded to the parties and erred in the division. The trial court found that "definitely [Gregory's] in possession of more personal property than [Sharon], and so that factor would definitely go in favor of her." Although the trial court did not place a numerical value on any property, it later noted that it could not make specific value findings because Gregory had not provided an inventory of the various antiques and collectibles he had assembled for resale during the marriage. The evidence supported that Gregory left the marriage with significantly more personal property than Sharon as he never allowed Sharon to remove all of her property from the marital home, he kept inventory for his resale business in two large storage units, and Gregory kept a working vehicle while Sharon received a vehicle that did not run. Gregory also retained a utility vehicle and two trailers, and Sharon testified that Gregory kept $60,000 to $80,000 in a home safe. Given this evidence, the trial court did not clearly err by finding that this factor favored the award of spousal support.

Gregory challenges the trial court's conclusion that Sharon was unable to obtain the necessities of life. The "necessities of life" is a factor in determining the equitable division of property, not in calculating spousal support. *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992). The needs of the parties is a relevant factor to a spousal support consideration, however. The trial court concluded that "[Gregory's] needs are all being met because he has a home, he has a car, he has a job. [Sharon's] needs are not being met because she has no home, no running car, no job." Although Gregory notes that Sharon's father had provided her financial assistance and a friend had provided her with housing, there is no dispute that the separation left Sharon unemployed and without an income, savings, independent

housing, or an operable vehicle. Thus, the trial court did not clearly err in determining that the needs of the parties weighed in favor of awarding spousal support.

Gregory complains that the trial court placed too much emphasis on the role of fault in calculating spousal support. The trial court concluded that the past conduct and relations of the parties "definitely" favored Sharon because, although the relationship was "rocky," it appeared that Gregory was "controlling and dominating." The court discussed some evidence of controlling behavior—Sharon did not have access to a vehicle, had to ask permission to go places, and had to rely on Gregory to provide money to her. The court stated that the general principles of equity "definitely" favored Sharon, citing "the rest of what's going on." Then, the trial court stated:

> Basically, this is in favor of [Sharon]. The court finds that the controlling, dominating behavior of [Gregory] puts him at fault for the divorce in this. Again, it was a rocky relationship. Basically, [Gregory] claims that [Sharon] would run away, and [Sharon] claims that [Gregory] would send her away. Probably a little of both. Definitely, some testimony that he would drop her off at her father's and throw her clothes in garbage bags on to the lawn.

The court also found "that [Gregory] is at fault for the divorce, and therefore that goes in favor of [Sharon]."

Gregory does not argue that the trial court inaccurately described his behavior. Sharon testified regarding the mental abuse Gregory inflicted, alleged that Gregory called her vulgar and demeaning names daily, and claimed that Gregory tried to control her appearance, clothing, phone use, social media comments, contact with family members, money, and transportation use. Gregory argues that the trial court conflated the prior conduct, fault, and principals of equity factors. The trial court did find that the same controlling and dominating behavior that led to the divorce was a factor that favored Sharon while weighing the past conduct of the parties. The trial court did not consistently discuss the factors in a linear fashion, as it discussed some of the factors more than once. However, evidence of Gregory's abusive and controlling treatment of Sharon is applicable to both factors, and the trial court made separate findings for each. Thus, the court did not clearly err in finding that the past-relations-of-the-parties factor, as well as the fault factor, favored Sharon receiving spousal support.

In sum, in awarding spousal support the court considered that Sharon was leaving a dominating relationship, without income, and had been working at least part-time for Gregory without pay for the duration of the marriage, and that she was limited in her opportunities by a lack of transportation and Gregory's control over her decisions. Sharon's lack of money, and her employment, housing, transportation, and health issues, showed that she had needs that would not be met. Further, Sharon's health condition and lack of transportation would continue to limit her income, while Gregory would continue earning income unhampered by transportation, housing, and health issues. Thus, the trial court's award of spousal support was "just and reasonable under the circumstances of the case" and "balance[d] the incomes and needs of the parties in a way that will not impoverish either party." *Myland*, 290 Mich App at 695.

We further discern no error in the calculation of the spousal support award. Gregory challenges the court's imputation of an annual income of $60,000 to $65,000. An accountant had prepared tax documents that were admitted into evidence, including joint and corporate returns for 2014 and 2015, as well as Gregory's W-2 for 2016. The W-2 indicated that Gregory's income from his company was $11,100 in 2016, and the joint returns indicated that income from the company was $14,400 in 2014 and $15,860 in 2015. Additionally, the corporate returns indicated that Gregory's company lost $10,356 in 2015, after wages. Sharon, as the bookkeeper for Gregory's business, prepared year-end statements for 2014 and 2015. She recorded 2014 operating expenses at $86,643 and operating income at $84,026, and 2015 income at $75,829 and expenses at $84,092.

Gregory argues that imputing $60,000 in annual income to him was clear error where the tax returns state an annual average income of $13,786 and his company makes little money. However, the court based its estimation on unreported cash sales, in addition to the income reported on the tax returns. Gregory contends that the trial court's calculation was erroneously based on a report that Gregory made over $30,000 in cash from a single show. However, the trial court estimated that Gregory would earn $15,000 at each of two longer shows he regularly worked, or $30,000 a year for two long shows a year, based on the testimony of Gregory that he made over $20,000 at a 10-day show in 2014 or 2015, and the testimony of Sharon that they counted over $30,000 in cash from a show in August 2015. Gregory also testified that he would put as much as $10,000 in the home safe after long shows. Given this record, the trial court conservatively calculated its estimates based on the higher figures presented by the parties, and there was no testimony that these profits were novel.

The remaining amount of annual income in cash that the trial court imputed to Gregory was from the roughly 10 smaller, two-day shows that he worked. The court estimated that Gregory made $1,000 in cash each day. This estimation was based on the testimony of Terri Hicks, who had worked booths for Gregory at shows since 2003, and stated that average sales were $800 to $1,200 cash a day for a small show. Jennifer Bronson twice worked for Gregory, and recalled that Gregory told her after one show that he had $10,000 in sales for a three-day show. Gregory estimated that he would at most make between $600 and $1,200 in cash from shows. Thus, the trial court's determination that Gregory made an estimated $20,000 in cash from 10 two-day shows a year ($1,000 a day), was not speculative, but based on the evidence. The trial court combined Gregory's reported income of $10,000 to $15,000 with the imputed cash earnings to arrive at the $60,000 to $65,000 income figure used to determine the spousal support award. Notably, the court did not attempt to estimate the amount that Gregory earns from antiques and collectibles, "selling stuff on the side all the time," resulting in a typical balance in his home safe of $1,000 to $3,000.

Gregory contends that the trial court erred in finding that he had not reported cash sales on his income tax forms. Gregory noted that his tax records listed $75,829 in gross sales in 2015 of which only $48,058 were from credit cards, leaving $27,771 that could have been cash or check deposits. However, the trial court found that Gregory did not report cash sales to Sharon, who prepared the statements that the accountant used to prepare the tax forms. This finding was based on Sharon's testimony that Gregory collected a lot of cash at shows that was not reflected in bank receipts. Gregory reported that the cash from business sales was used to reinvest, or to pay personal expenses. Additionally, the trial court determined that Gregory's financial

reporting was not credible. Sharon did not know how salary figures were calculated on tax forms because she did not include any salary figures in her monthly or year-end statements. Gregory claimed to be unsure where money came from to cover his reported business losses, or how his reported income of roughly $850 a month in 2015 was sufficient to cover his expenses, which included a $285 lot fee, a phone bill, a truck payment, insurance, utilities, internet and cable fees, food and living expenses, and payments on six credit cards with a total balance of $24,000.[2] Thus, the trial court did not clearly err in finding that Gregory had the income to pay spousal support.

## II. PERSONAL INJURY LAWSUIT SETTLEMENT

In relation to the court's division of the parties' property, Gregory contends that the trial court's division of a lawsuit settlement amount was "inherently confusing." During the marriage, Gregory and Sharon stayed at a hotel and were bitten by bedbugs. Gregory experienced an allergic reaction to the bites that required hospitalization. The couple filed suit jointly against the hotel and reached a settlement of $8,200. A substantial percentage of the lawsuit proceeds went to purchase personal property that Gregory retained after the parties' separation. Sharon came away with a vehicle, which Gregory claims he bought before the settlement and then "reimburse[d]" himself for from the settlement proceeds. The trial court considered the value of that vehicle and, combined with an award of $2,600 in cash, granted Sharon approximately half of the settlement amount.

We review for clear error a trial court's factual findings underlying a property award. *Sparks*, 440 Mich at 151. In considering whether the trial court committed clear error, we must give "special deference" to its assessment of the credibility of the witnesses. *Draggoo v Draggoo*, 223 Mich App 415, 429; 566 NW2d 642 (1997). "The dispositional ruling is discretionary and should be affirmed unless this Court is left with the firm conviction that the division was inequitable." *Id*. at 429-430. A property division need not be mathematically equal in order to be equitable "as long as there is an adequate explanation for the chosen distribution." *Washington v Washington*, 283 Mich App 667, 673; 770 NW2d 908 (2009).

Gregory does not challenge the trial court's determination that the settlement proceeds were marital property. And the court's division was not confusing. The court considered the items purchased by the parties with the settlement proceeds, found that Sharon had received only the vehicle from that pool, and added cash to equalize the awards. This was equitable and not erroneous.

---

[2] Gregory testified that his interrogatory responses indicated that there were $2,147 in monthly expenses, not including $1,065 in credit card payments, but that some of those expenses should have been attributed to his company.

## IV. ATTORNEY FEES

Gregory also challenges the court's order requiring him to cover Sharon's attorney fees. We review for an abuse of discretion "a trial court's award of attorney fees in a divorce action" and for clear error the court's underlying factual findings. *Richards v Richards*, 310 Mich App 683, 699-700; 874 NW2d 704 (2015).

MCR 3.206(C) provides for the award of attorney fees in a divorce action as follows:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that

> (a) the party is unable to bear the expense of the action, and that the other party is able to pay, or

> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.

Thus, the party seeking attorney fees must present evidence sufficient to show either that the party is unable to bear the expense of the action, and that the other party is able to pay, or that the attorney fees were incurred because the other party refused to comply with a previous court order, despite having the ability to comply. *Richards*, 310 Mich App at 700-701.

Sharon amassed $9,935 in attorney fees. She borrowed $2,200 to pay them, but could afford no more. Based on the court's calculation of Gregory's income, the court determined:

> Clearly, [Sharon] is not able to pay her attorney. An attorney fees statement has been submitted by [Sharon] and the statutes allow that, if [Gregory] is able to afford it, he can be ordered to pay those attorney fees. The court is going to order [Gregory] to pay those attorney fees. Clearly, he makes an income that he can afford to pay those attorney fees.

The trial court asked the attorneys to agree on how the fees--$9,029--would be paid and suggested that it be paid monthly over a two-year period to reduce the burden Gregory.

Gregory argues that he is unable to pay the fees, citing the income he reported on his tax returns and the spousal support and property settlement he was already required to pay.

However, should Gregory pay monthly over two years as suggested by the court, the amount would be $376 a month of his estimated $5,000 a month income. Thus, the trial court did not clearly err in finding that Gregory could afford the attorney fees.

Gregory also argues that Sharon did not demonstrate that she could not pay her own fees as she should be able to work. While Sharon may be able to earn an income in the future, the court accurately found that she was left destitute at the time of the divorce and may have difficulty finding employment given her health and lack of transportation.

We affirm.


/s/ Cynthia Diane Stephens
/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra