*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SATHYA GOWDA,

      Plaintiff-Appellant,

v

MUNE GOWDA,

      Defendant-Appellee.

UNPUBLISHED
September 21, 2023

Nos. 360138; 362376; 362878;
     363086
Oakland Circuit Court
LC No. 2016-841241-DO

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

In these consolidated appeals, plaintiff challenges several orders entered in the parties' postjudgment divorce proceedings. In Docket No. 360138, plaintiff appeals as of right the trial court's January 11, 2022 order to the extent that it denied her request for attorney fees incurred in defending defendant's motion for modification of spousal support. In Docket Nos. 362376 and 363086, plaintiff appeals by delayed leave granted the trial court's July 6, 2022 order clarifying its January 11, 2022 order that partially granted defendant's request to modify spousal support. And in Docket No. 362878, plaintiff appeals by delayed leave granted the trial court's March 5, 2022 order denying her motion to be awarded two parcels of real property under the terms of the parties' divorce judgment.

In Docket No. 360138, we vacate in part the trial court's January 11, 2022 order insofar that it denied plaintiff's request for attorney fees and remand for further proceedings because the court failed to make any factual findings or provide any analysis to explain its denial of attorney fees. In Docket Nos. 362376 and 363086, because the trial court did not clearly err in its factual findings and it did not arrive at an inequitable outcome by selecting 20% of defendant's annual income as the appropriate amount of defendant's annual spousal support obligation, we affirm the trial court's order in that respect. But because it is inequitable to allow defendant to determine his annual income without providing any documentary support for his determination, we remand for modification of the trial court's order to require defendant to supply appropriate financial documentation to plaintiff every year to support his reported income. In Docket No. 362878, we

-1-

affirm the trial court's denial of plaintiff's request to be awarded two parcels of real property that defendant did not disclose during the divorce proceedings.

## I. BACKGROUND

Plaintiff and defendant divorced in April 2017, after 43 years of marriage. The parties entered into a consent judgment of divorce, which incorporated the terms of a settlement agreement. As part of the settlement, defendant's retirement accounts were divided evenly between the parties, and plaintiff was awarded some nonancestral real property in India.[1] Defendant was required to pay plaintiff spousal support of $25,000 a month, with the obligation remaining "modifiable as provided by Michigan law." Shortly after entry of the judgment of divorce, plaintiff moved to India. She then lived at a property, without rent or other mortgage payments, known as the Purple Lotus Hotel, in which she owned a 25% interest. Defendant introduced evidence that plaintiff's living expenses, not including rent, were 194% higher when she lived in Michigan compared to where she lives currently in Bangalore, India. When including rent, consumer prices were 242% higher in Bloomfield Hills than in Bangalore.[2] Although plaintiff testified that she had no income, she acknowledged that she now receives monthly Social Security benefits. Plaintiff also testified that she is an artist and has a website under construction that will allow people to purchase her art, but claimed that she had not made any income from that enterprise and does not anticipate making any.

Defendant is a prominent plastic surgeon in the Metro Detroit area and solely owned his practice. Because defendant was the practice's sole owner, the amount of income attributed to him included both his wages and the practice's net income. Defendant's effective income from 2015 through 2020 was calculated to be the following:

- 2015: approximately $1,045,000

- 2016: approximately $1,046,000

- 2017: approximately $957,000

- 2018: approximately $1,108,000

- 2019: approximately $1,366,000

- 2020: approximately $695,000

---

[1] Each party's respective ancestral properties (i.e., property handed down by family) listed in the settlement agreement were to remain with that party, free from any claim of the other party.

[2] That same exhibit indicated that one would need approximately $5,137 in Bloomfield Hills to maintain the same standard of life provided by $1,502 in Bangalore.

At the time of the April 2017 judgment of divorce, the most recent financial data available to the parties necessarily was limited to the 2015 and 2016 data. Therefore, with defendant earning approximately $1,000,000 in 2015 and 2016, and with his spousal support obligation being $300,000 a year, defendant's support obligation equated to approximately 30% of his income.

In 2020, the COVID-19 pandemic impacted defendant's income. The Governor issued executive orders that temporarily shuttered many businesses and prohibited medical providers from performing nonessential procedures.[3] See *In re Certified Questions from United States Dist Court, Western Dist of Mich*, 506 Mich 332, 337-338; 958 NW2d 1 (2020). As a result, defendant's practice was closed for 10 weeks. Further, aside from the imposed shutdown, people were hesitant to undergo elective medical procedures during the pandemic. Thus, when defendant's practice was allowed to open again, there was an increase in cancelations and a corresponding drop in patients. Another reason for the decline in defendant's income in 2020 was that defendant had surgery performed on a shoulder, which rendered him unavailable to work for approximately six weeks. Unfortunately for defendant, the surgery was considered a "failure," and he described the shoulder as being worse after the surgery than before. The pain in his shoulder made it difficult for him to perform surgeries.

Historically, the revenue from surgeries accounted for approximately 60% of the practice's income, with the nonsurgical side of the business contributing 40%.[4] In 2020, that flip-flopped such that surgeries accounted for 40% of the practice's income, with the nonsurgical side contributing 60%.

## A. MOTION TO MODIFY SPOUSAL SUPPORT

When the COVID shutdown occurred in March 2020, defendant filed a motion to modify the amount of his spousal support obligation. In addition to defendant's income coming to a halt under the COVID shutdown, defendant averred that, at his age, he could not continue to work at his historic pace, that plaintiff's living expenses had been reduced since entry of the divorce judgment, and that plaintiff's portfolio should be generating sufficient income for herself. With no stream of income in April 2020, defendant started paying plaintiff $5,000 in support every month. He continued to pay that reduced amount, even after his work resumed. Defendant testified that he never reverted back to the $25,000 monthly payments because he was waiting for the court to rule on his motion and decide the proper amount.

Defendant, who was 74 years old at the time of the hearing, also presented evidence that his overall health was deteriorating, which adversely affected his ability to work. Defendant testified that in addition to his shoulder issue, he had pain and weakness in his hands and thumb joints, which is a serious problem for surgeons. The only option for treatment was surgery, which

---

[3] Our Supreme Court later determined that the Governor's orders were unconstitutional, *In re Certified Questions from United States Dist Court, Western Dist of Mich*, 506 Mich 332, 372, 338, 385; 958 NW2d 1 (2020), but the forced closure had already occurred by that time.

[4] Nonsurgical aspects included procedures such as injectables (e.g., Botox and fillers), lasers, and skin-care services.

would require him to be off work for six to eight weeks. Defendant stated that he presently was not planning to have that surgery due to the risk, but he might have to if his condition deteriorated further. Defendant also had problems with his knees and feet. According to defendant, his feet would swell up tremendously after standing for long periods of time. To help combat this, he began using a pump to help improve circulation to his feet. Surgery was needed to address the feet issue. Defendant also testified that he requires knee-replacement surgery on both knees, which are the first in priority to occur. At the time of the evidentiary hearing, defendant was scheduled for his first knee surgery in October 2021, and was scheduled to have the second knee-replacement surgery three months afterward. Then, three months after that second knee surgery, defendant would have his first foot surgery, followed by the second foot surgery three or more months after that.

Defendant explained that because of the pain and discomfort he was enduring with these ailments, he was no longer able to work the lengthy 12- to 14-hour days that he used to work. Instead, he was working six- to nine-hour days. Likewise, defendant was performing less surgeries than before, not only because he was working less hours, but because it now took him longer to perform those same surgeries due to his physical ailments. Further, in early 2021, in order to aid defendant in the operating room, he hired a doctor to be a "first surgical assist." That person helped defendant on account of his physical limitations. The cost to the practice for hiring that person was approximately $150,000 a year. However, the surgical-assist concept did not work out as planned, so defendant hired a new plastic surgeon, who started in July 2021 at a cost to the practice of approximately $280,000 to $300,000 a year.

Defendant also testified that his practice is losing a stream of income because another doctor who rents out some of the office's space and surgical suites was getting his own building and would no longer be renting after 2021. According to defendant, the loss of this tenant would result in a loss of $200,000 a year.

Plaintiff and defendant presented expert witnesses who both opined that because of the uncertainty and variability in defendant's income going forward, it would be most prudent to specify an amount of spousal support as a percentage of defendant's income. However, the parties disagreed on the percentage that should be awarded. Defendant maintained that 10% of his income was fair because he needed to be able to save for his own eventual retirement. Plaintiff argued that 30% was a reasonable percentage because that was what the parties initially contemplated in their settlement.

The trial court held an evidentiary hearing spanning several dates from January to September 2021. The parties submitted proposed findings of fact and conclusions of law. In plaintiff's filing, she requested, under MCL 552.13(1) and MCR 3.206, attorney fees associated with defending defendant's motion to modify spousal support.

The trial court agreed that reconsideration of the proper amount of spousal support was warranted because defendant established a change in circumstances, primarily defendant's reduction in income in 2020, coupled with his reduced ability to work on account of his physical ailments. The court also noted that plaintiff's cost-of-living expenses were greatly reduced after she moved to India following entry of the judgment of divorce.

Although the court cited 14 factors a court typically should consider in determining the amount of spousal support, it ruled that six of them did not apply in the context of a modification of spousal support: (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the source and amount of property awarded to the parties; (4) the parties' prior standard of living and whether either is responsible for the support of others; (5) the parties' contributions to the joint estate; and (6) a party's fault in causing the divorce.

Regarding plaintiff, the trial court found that she is unable to work due to her age and health. But the court determined that with her move to India, she had a 71% reduction in living expenses. The court found that plaintiff's total monthly expenses were $4,860. The court also noted that since entry of the judgment of divorce, plaintiff had started receiving $1,418 in Social Security benefits each month. The court also found that, contrary to plaintiff's assertions, the Purple Lotus Hotel was open for business.

Regarding defendant, the trial court found that he was able to work, but his ability to do so has been impeded by his age and health. And with the loss of defendant's tenant, the court found that defendant's annual income would be reduced by $200,000 going forward. Although defendant was on pace to earn more in 2021 than what he earned in 2020, there was great uncertainty due to defendant's pending surgeries and overall health. The court concluded:

> This Court finds that it is difficult to determine the exact amount of income the Defendant will continue to earn from year to year and therefore this Court finds that the Defendant is entitled to a reduction in Spousal Support; however, the Court finds that Spousal Support should be a percentage of the Defendant's income as conceded upon by the parties.

* * *

> The Defendant has met the threshold for the Court to review and reduce the spousal support order. For the calendar year 2020 moving forward, spousal support shall be modified to 20% twenty [sic] percent of the Defendant's income.

Pursuant to MCL 552.603(2), the trial court entered an order on January 11, 2022, which modified defendant's spousal support obligation retroactively to March 26, 2020, the date defendant filed his motion to modify spousal support. Regarding attorney fees, the court simply stated, "This Court finds that neither party shall be awarded attorney fees."

On May 9, 2022, plaintiff filed a motion to enforce the trial court's January 11, 2022 support order. Plaintiff argued that even though defendant's 2021 income was determined to be $1.4 million, he continued to pay only $5,000 a month in spousal support. The court ultimately issued an order on July 6, 2022, stating that spousal support would continue to be assessed at 20% of defendant's income, which would include his Social Security income. But the court clarified that defendant was to pay plaintiff $10,000 a month during the year, and at the end of the year

when defendant's yearly income was determined, he was to satisfy any shortfall between what was actually paid and 20% of his total income by February 1 of the following year.[5]

## B. THE "LAND MOTION"

At issue in Docket No. 362878 is the trial court's resolution of a motion filed by plaintiff to compel the court to award her real property in India.

On April 7, 2021, plaintiff filed a motion, which the parties colloquially refer to as the "land motion." The motion was brought to enforce ¶ 37 of the parties' settlement agreement, which states, in pertinent part:

> Any assets not identified herein are not distributed pursuant to this Agreement. Any unidentified assets that are owned by a party or in which a party has an equitable interest that are discovered to be owned by a party or subject to the equitable interest of a party and which were concealed by a party shall be awarded to the other party.

Plaintiff alleged that, after the divorce, she discovered there were two parcels of real property in India that defendant owned and failed to disclose.

Defendant filed a response in which he denied having any knowledge of ownership of the properties at the time of the divorce. He also stated that, with regard to the parcel identified in ¶ 29 of plaintiff's motion, after receiving plaintiff's motion, he discovered that he had inherited that property without any knowledge and against his expressed wishes. After conducting further investigation, defendant filed a supplemental response on August 26, 2021. He stated that he obtained copies of documents that transferred property to him, and that one of those documents actually contained his signature. Defendant maintained that he had no intent to conceal any ownership interest, and he pointed out that had he disclosed it, he still would have received the property as ancestral property. Plaintiff filed a supplemental motion, clarifying that there were two parcels of property at issue: "Parcel 19" and "Parcel 14/3," both of which were "registered" to defendant in 2002.

At an evidentiary hearing, evidence was presented that the properties at issue were initially obtained by defendant's grandfather in 1941. The grandfather later transferred the properties to defendant's father in 1958. In 2001, defendant's father partitioned the properties and conveyed them to his children, including defendant. However, defendant's older brother testified that defendant was not actually in India in 2001, when it was decided that their father's property would

---

[5] Because only a "shortfall" was to be remedied by defendant, the net result of the trial court's order was that plaintiff would receive 20% of defendant's income as spousal support, with a minimum amount of $120,000 for any given year. In other words, there was no provision in the order for plaintiff to reimburse defendant if defendant's $10,000 monthly payments over the course of the year ended up exceeding 20% of his income.

be partitioned, and he was not in India when the partition deed was executed. The brother stated that defendant did not sign the deed until sometime in 2002 or 2003.

Although the size and characteristics of the properties were the subject of much of the evidentiary hearing, those characteristics are largely irrelevant because defendant admitted to and stipulated that he owned both Parcel No. 19 and Parcel No. 14/3.[6] He also admitted that he did not disclose his ownership of the properties before entry of the judgment of divorce. His primary defense was that failure to disclose the properties was an oversight on his part because he had never been involved with the properties and did not recall his ownership of them, and there was no intent to conceal or deceive. Defendant explained that when the initial motion was filed, he did not recall having any such property interest, so he contacted his brothers in India to look into the matter. Defendant then filed his supplemental response after learning the results of that investigation. Although there is a deed or document that defendant signed, he stated that he forgot about it.[7] Defendant stated that he had no involvement with the properties and never paid any property taxes.

The trial court denied plaintiff's motion, finding that defendant did not "conceal" his ownership of the properties. The court opined that defendant forgot about the properties and his actions were not intentional.

## II. ANALYSIS

## A. ATTORNEY FEES

Plaintiff argues that the trial court erred by failing to make any factual findings when it denied her request for attorney fees incurred in defending against defendant's motion to modify spousal support. We agree. A trial court's decision on a motion for attorney fees is reviewed for an abuse of discretion. *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010). A court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

In her proposed findings of fact submitted in response to defendant's motion to modify spousal support, plaintiff argued that she was entitled to attorney fees incurred in defending against that motion. She claimed that she was entitled to attorney fees under MCL 552.13(1) and MCR 3.206.

MCL 552.13(1) provides, in pertinent part:

> In every action brought, either for a divorce or for a separation, the court may require either party to pay alimony for the suitable maintenance of the adverse

---

[6] There was some dispute about the size of Parcel No 14/3, with plaintiff maintaining that defendant received approximately seven acres, and defendant maintaining that it was actually just over one acre.

[7] Defendant also testified that the deed, which was admitted into evidence, was written in the language of Kannada, which he did not fully understand.

party, to pay such sums as shall be deemed proper and necessary to conserve any real or personal property owned by the parties or either of them, and to pay any sums necessary to enable the adverse party to carry on or defend the action, during its pendency.

And MCR 3.206(D) states:

(1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

(2) A party who requests attorney fees and expenses must allege facts sufficient to show that:

(a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or

(b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

"[W]hether a party has an inability to pay is dependent on the particular facts and circumstances of each case." *Loutts v Loutts (After Remand)*, 309 Mich App 203, 217; 871 NW2d 298 (2015). In *Loutts*, this Court observed:

"It is incumbent upon the trial court to consider whether attorney fees are necessary for plaintiff to defend her suit, including whether, under the circumstances, plaintiff would have to invade the same spousal support assets she is relying on to live in order to pay her attorney fees and whether, under the specific circumstances, defendant has the ability to pay or contribute to plaintiff's fees." [*Id*. at 217-218 (brackets omitted), quoting *Myland v Myland*, 290 Mich App 691, 703; 804 NW2d 124 (2010).]

"This requires a trial court to give 'special consideration to the specific financial situations of the parties and the equities involved.' " *Loutts*, 309 Mich App at 218, quoting *Myland*, 290 Mich App at 703.

In its opinion and order modifying spousal support, the trial court in a single sentence addressing attorney fees, determined "that neither party shall be awarded attorney fees." Although the trial court earlier had found that plaintiff had a favorable financial situation by having a lesser cost of living while in India—by having no monthly rent or utility obligation at her current residence and by now receiving Social Security income—the court never made an explicit finding regarding whether plaintiff could bear the attorney-fee expense. Similarly, although the court found that defendant's ability to earn income would be impeded going forward, the court never made any findings regarding whether defendant was able to pay for plaintiff's attorney fees. Thus, the record is inadequate to allow a proper review of the issue. We therefore vacate the portion of

-8-

the trial court's order denying plaintiff's request for attorney fees and remand for the trial court to make the necessary findings and analysis.[8] See *Colen v Colen*, 331 Mich App 295, 309; 952 NW2d 558 (2020) ("The determination whether plaintiff satisfies the requirements of the court rule regarding her financial inability to bear these costs is a factual one that should first be addressed by the trial court.").

## B. SPOUSAL SUPPORT

Plaintiff argues that the trial court erred by modifying defendant's spousal support obligation to 20% of defendant's income. We disagree, but remand for modification of the trial court's order to require defendant to support his income determinations with appropriate financial records.

This Court reviews a trial court's factual findings related to its decision to modify spousal support for clear error. *Thornton v Thornton*, 277 Mich App 453, 458; 746 NW2d 627 (2007). A finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake was made. *Seifeddine v Jaber*, 327 Mich App 514, 516; 934 NW2d 64 (2019). "If the trial court's findings are not clearly erroneous, this Court must then decide whether the dispositional ruling was fair and equitable in light of the facts." *Thornton*, 277 Mich App at 458-459 (quotation marks and citation omitted). This Court must affirm the trial court's decision regarding spousal support unless it is "firmly convinced" that the decision was "inequitable." *Id*. at 459.

"The main objective of alimony is to balance the incomes and needs of the parties in a way that will not impoverish either party. Alimony is to be based on what is just and reasonable under the circumstances of the case." *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000) (citations omitted). MCL 552.28 authorizes the modification of spousal support awards and states:

> On petition of either party, after a judgment for alimony . . . , the court may revise and alter the judgment, respecting the amount or payment of the alimony . . . and may make any judgment respecting any of the matters that the court might have made in the original action.

"To warrant modification, however, the moving party first must establish new facts or changed circumstances arising since the prior order regarding support was issued." *Luckow v Luckow*, 291 Mich App 417, 424; 805 NW2d 453 (2011). "If the court finds that a party has established a change in circumstances, it must then make factual findings from which to conclude whether the alimony should be modified and, if so, by what amount." *Id*. (quotation marks and citation omitted). When making this determination, a trial court should consider the following factors:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded

---

[8] On appeal, defendant maintains that attorney fees are not recoverable under MCL 552.13 in a postjudgment proceeding. But because the matter is being remanded, we decline to address that legal argument without it being considered and addressed by the trial court in the first instance.

to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Berger v Berger*, 277 Mich App 700, 726-727; 747 NW2d 336 (2008).][9]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003).

Within this issue, plaintiff first argues that the trial court erred by deeming certain factors not applicable in this instance. We disagree. The trial court determined that Factors (1) past relations of the parties, (2) length of the marriage, (4) source and amount of property awarded, (10) prior standard of living, (11) contributions to the joint estate, and (12) a party's fault in causing the divorce were not relevant because they implicated facts or circumstances that occurred or existed before the entry of the judgment of divorce. This is a correct view of the law because "[t]he modification of an alimony award must be based on new facts or changed circumstances arising since the judgment of divorce." *Moore*, 242 Mich App at 654; see also *Ackerman v Ackerman*, 197 Mich App 300, 301; 495 NW2d 173 (1992). Plaintiff's claim that this principle should not apply here because the court never made those factor determinations earlier is unavailing. There are no prior court findings because the parties voluntarily entered into a settlement agreement whereby defendant was to pay plaintiff $25,000 a month in spousal support. Defendant desired to modify that amount, so only changes of circumstances since the entry of the judgment of divorce are relevant. *Moore*, 242 Mich App at 654; *Ackerman*, 197 Mich App at 301. Thus, facts or circumstances that existed before entry of the judgment are relevant only to give context to any changes that have since occurred. Some factors, such as the length of the marriage and the past conduct of the parties, are largely irrelevant because they were contemplated by the parties in reaching their initial settlement.

Plaintiff also argues that many of the trial court's factual findings in support of its decision are erroneous. However, because plaintiff presented this argument in context with her argument on how the court should have weighed the various factors, the purported factual errors are not at the forefront of plaintiff's presentation. Plaintiff asserts that the following findings are erroneous: (1) defendant's income was less because of the COVID pandemic, (2) plaintiff's needs are less because she lives in India, (3) plaintiff testified that she is not using the support she receives for living expenses, (4) the Purple Lotus Hotel was operating, and (5) plaintiff was preparing to sell her artwork.

---

[9] The trial court listed these same 14 factors, citing *Thames v Thames*, 191 Mich App 299, 308; 477 NW2d 496 (1991). However, *Thames* only lists 12 enumerated factors, and then notes that fault can also be considered. In his brief on appeal, defendant cites the actual 12 factors from *Thames*, but attributes Factor (12) to "general principles of equity" when the trial court indicated that Factor (12) is a party's fault in causing the divorce, consistent with the factors listed in *Berger*.

None of plaintiff's factual challenges has merit. Regarding plaintiff's claim that the trial court erred when it found that defendant's income was "less because of the [COVID] pandemic," the evidence was unrebutted that defendant's practice was shut down for 10 weeks in 2020, which impacted defendant's ability to earn an income during this period. Indeed, plaintiff acknowledges in her brief on appeal that there was a reduction in defendant's income in 2020. We also note that the trial court clearly recognized that, for 2021, defendant "was on track to earn in excess of what he earned in the calendar year 2020," but that income going forward may "fluctuate." To the extent that plaintiff is claiming that the trial court clearly erred by finding that defendant's income will be reduced from its historical average going forward (not based on the pandemic), that finding is not clearly erroneous. The evidence indicated that defendant's physical condition was deteriorating, which affected how many surgeries he could perform and thereby affected his practice's income. Further, there was evidence that defendant would lose an income stream of approximately $200,000 a year starting in 2022 because a tenant was moving out.[10]

Plaintiff next takes issue with the trial court finding that her needs are now less because she lives in India. This finding is not clearly erroneous. Evidence was introduced that the cost-of-living expenses in Bangalore, India, compared to Bloomfield Hills, Michigan, are substantially less. Indeed, the evidence shows that $5,137 in living expenses in Bloomfield Hills equated to $1,502 in living expenses in Bangalore.

Plaintiff also argues that the trial court erred when it found that she testified that she is not using the support she receives for living expenses. This very question was addressed in her testimony in the following exchange:

*Q.* So you would agree with me that most of the spousal support that you were receiving was not being used for your daily living expenses, correct?

*A.* Yes.

Given this admission, the trial court did not clearly err by making the consistent finding.[11]

---

[10] No evidence was presenting regarding the feasibility of defendant finding a replacement tenant. The tenant who was leaving not only rented office space, but also had the use of the surgical suites, which would limit the pool of a possible similarly situated replacement tenant.

Further, the fact that defendant ended up making approximately $1.4 million in 2021 does not affect our analysis. First, this evidence was not available to the trial court at the time of the evidentiary hearing. It was presented to the court months later. Second, defendant and his office manager testified that 2021 was somewhat unique because people who had their procedures canceled in 2020 due to COVID were deciding to go forward with the procedures in 2021, which created a "backlog."

[11] The court also went on to find that plaintiff has used the spousal support payments to purchase an apartment and to contribute to charitable organizations in India, which also is supported by plaintiff's testimony.

Plaintiff lastly takes exception to the trial court finding that the Purple Lotus Hotel was in operation at the time and that plaintiff was preparing to sell her artwork. Again, neither finding is clearly erroneous. Regarding the artwork, plaintiff testified that a website was under construction that would allow people to purchase her art. And regarding the Purple Lotus Hotel, although plaintiff denied that the hotel was open for business, defendant demonstrated at the hearing that some websites showed the property as open for business and accepting bookings. Consequently, we do not have a definite and firm conviction that the trial court made a mistake. Also, the court necessarily found that plaintiff's testimony regarding this point was not credible, and special deference is given to a lower court's findings that are based on the credibility of the witnesses. See *Seifeddine*, 327 Mich App at 516. Plaintiff also asserts that the trial court committed an error of law by considering these two facts. But as plaintiff fully acknowledges, one of the factors a court should consider when awarding spousal support is the present situation of the parties, which includes their present income or present ability to earn an income. We do not view the trial court's opinion as considering plaintiff's *ownership* of the ancestral Purple Lotus Hotel per se, but rather as a potential stream of income for plaintiff. Similarly, although plaintiff's website was under construction, the intent behind the website was to eventually create some income for plaintiff. These are proper considerations. We also note that the trial court never assigned any value to these potential streams of income, nor is there any indication that the court even relied on these findings while making its dispositive decision.

Plaintiff further argues that the trial court's decision to set support at 20% of defendant's income was erroneous.[12] "If the trial court's findings are not clearly erroneous, this Court must then decide whether the dispositional ruling was fair and equitable in light of the facts." *Thornton*, 277 Mich App at 458-459 (quotation marks and citation omitted). This Court must affirm the trial court's decision regarding spousal support unless it is "firmly convinced" that the decision was "inequitable." *Id*. at 459.

Although one aspect of the trial court's ruling gives us pause, under the deferential standard of review, we affirm. The aspect that causes some concern is the following portion of the trial court's opinion:

This Court finds that it is difficult to determine the exact amount of income the Defendant will continue to earn from year to year and *therefore this Court finds*

---

[12] Plaintiff also makes a related argument that the court erred by "allowing" defendant to pay $5,000 a month before the court actually modified the support amount. Plaintiff asserts that defendant's claim that there was an agreement between him and plaintiff to allow that reduction needed to be established with a writing. Plaintiff's argument is not persuasive. The trial court never found that there was such an agreement or even relied on the existence of one when making its ruling. Moreover, the court never "allowed" the $5,000 monthly payments. The court ordered that, starting in calendar year 2020, support was to be 20% of defendant's income. And because there was evidence that defendant earned approximately $700,000 in 2020, the amount of support owed to plaintiff for 2020 should have been approximately $140,000, which would average out to more than $11,000 a month.

*that the Defendant is entitled to a reduction in Spousal Support*; however, the Court finds that Spousal Support should be a percentage of the Defendant's income as conceded upon by the parties. [Emphasis added.]

It seems that the trial court thought that a *reduction* in spousal support was warranted simply because of the *uncertainty* in defendant's income going forward. The increased variability in income is not itself a reason to reduce spousal support. Indeed, it was the variability in income that was the basis for the parties agreeing that *using a percentage* of defendant's income was the best approach to determining the amount of any modification. Simply maintaining the 30% amount coupled with a presumed lesser income would naturally result in lesser support as well.[13] Thus, the critical question is whether essentially lowering the amount of support from 30% to 20% was equitable.

Although the trial court did not explain how it arrived at the 20% value, the court's findings show that there were two main postjudgment considerations for this determination: (1) plaintiff's lesser living expenses, and (2) defendant's reduced ability to work. The court stressed earlier that plaintiff's living expenses were less now than what they were at the time of the judgment of divorce. The court found that her expenses were reduced by 71%. Additionally, the court found that plaintiff was now receiving more than $1,400 a month in Social Security benefits, which she was not earning at the time of the judgment of divorce. The court also found that defendant's ability to work is and will continue to be impeded due to his age and deteriorating health. Although, as already discussed, the finding regarding defendant's impaired ability to work is not particularly pertinent for reducing the percentage amount, given the other specific findings that the court made, we are not "firmly convinced" that the court's ultimate decision to set the amount of spousal support at 20% of defendant's income was unfair or inequitable. This is especially true because, as the order is written, the amount of support is not just a flat percentage—it is a percentage *with a guaranteed minimum of $120,000 support per year*. With the court finding that plaintiff's monthly expenses are $4,860, which correlates to yearly expenses of $58,320, a minimum $120,000 in yearly support is more than double plaintiff's expenses, which is not unfair or inequitable.[14] In sum, defendant is (mostly) protected by modifying support to be a percentage of his income,[15] and plaintiff is protected because the $120,000 minimum threshold amount of

---

[13] For example, in 2018 and 2019, when defendant was making approximately $1,000,000 a year, he was paying $300,000 a year in support. If the same 30% ratio is used, then if his income declined to $700,000 (as it did in 2020), he would then be obligated to pay $210,000, which would be a reduction from his "normal" amount.

[14] We recognize that as long as defendant earns in excess of $600,000 a year, the amount of support owed to plaintiff will be greater than $120,000. Even in the difficult 2020-year, defendant earned in excess of $600,000.

[15] But if defendant's income takes a precipitous drop, he would still be responsible for the $120,000 in yearly support.

support is plainly sufficient to more than cover her living expenses. Accordingly, we affirm the trial court's decision to set support at 20% of defendant's income.

Plaintiff also argues, however, that it is inequitable for defendant to be solely in control of determining the amount that represents 20% of his income. In its July 6, 2022 order, the trial court clarified that, during the year, defendant is to pay plaintiff $10,000 a month in spousal support. Then, at the end of the year, defendant "shall determine whether there is a shortfall" and pay plaintiff any additional amount due by February 1 of the following year. This overall scheme is logical. Defendant is in the best position to know what his income is at the end of the year. However, there is no requirement that defendant support his determinations with any proof or documentation. Simply requiring plaintiff to accept defendant's income determinations at face value, without any documentary support, is not fair. We therefore remand for the trial court to modify its order to require defendant to supply necessary documentation to support his income determinations.[16]

## C. THE "LAND MOTION"

Plaintiff argues that the trial court erred when it declined to award her two of defendant's properties that he failed to disclose during the divorce proceedings. We disagree.

A court's decision on a motion to enforce a settlement agreement is reviewed for an abuse of discretion. *Groulx v Carlson*, 176 Mich App 484, 493; 440 NW2d 644 (1989). This Court reviews the interpretation of a settlement agreement de novo because such agreements are governed by the legal principles applicable to the construction of contracts. *Myland*, 290 Mich App at 700; *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). But the trial court's factual findings are reviewed for clear error. *Sparks v Sparks*, 440 Mich 141, 151; 485 NW2d 893 (1992). A finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake was made. *Seifeddine*, 327 Mich App at 516.

Plaintiff sought to be awarded the two parcels of real property in India under ¶ 37 of the settlement agreement, which provides, in pertinent part:

> Any assets not identified herein are not distributed pursuant to this Agreement. Any unidentified assets that are owned by a party or in which a party has an equitable interest that are discovered to be owned by a party or subject to the equitable interest of a party *and which were concealed by a party* shall be awarded to the other party. [Emphasis added.]

Plaintiff alleged that defendant concealed his interest in Parcels 14/3 and 19, which were located in India. The trial court found that although it was uncontested that defendant failed to

---

[16] We note that defendant appears to already be complying with this modification. When determining his income for 2021, defendant supplied plaintiff with his practice's profit and loss statement for 2021.

disclose his interest in the properties, defendant's failure to disclose was inadvertent and did not constitute "concealment." The court did not err.

If the language in the settlement agreement is clear and unambiguous, it must be interpreted and enforced as written. *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 111; 595 NW2d 832 (1999). Courts are to interpret the words in a contract according to their ordinary meaning, and a dictionary may be used to determine the ordinary meaning of a word or phrase. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 515; 773 NW2d 758 (2009). Under the settlement agreement in the instant case, only property that was "concealed by a party" was required to be "awarded to the other party." The settlement agreement does not provide a definition for "conceal" or "concealment." *Black's Law Dictionary* (11th ed) defines "concealment" as:

> **1**. The act of preventing disclosure or refraining from disclosing; esp. the injurious or *intentional suppression or nondisclosure* of facts that one is obligated to reveal; COVER-UP. **2**. The *act of removing from sight or notice*; hiding. . . .
>
> > "Concealment is an *affirmative act intended* or known to be likely to keep another from learning of a fact of which he would otherwise have learned. Such affirmative action is always equivalent to a misrepresentation and has any effect that a misrepresentation would have . . ." Restatement (Second) of Contract § 160 cmt. a (1979). [Emphasis added.]

As is evident from this definition, the trial court did not err by concluding that the act of "concealing" requires an "intentional" or "affirmative" component. If only the mere failure to disclose was necessary to trigger the forfeiture provision, then there would have been no need for the parties to add the phrase "and which were concealed by a party." Importantly, when interpreting contracts, courts are to give effect to every word, phrase, and clause, while avoiding an interpretation that would render any part of the contract surplusage or nugatory. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). In this instance, interpreting "and which were concealed by a party" to not require an intentional component would make that phrase nugatory because it could be eliminated without affecting the provision's meaning.[17]

The trial court found defendant's failure to disclose his interest in the properties to be accidental. This finding is not clearly erroneous. Defendant testified that he forgot about his interest in the properties. The record shows that although defendant signed the partition deed, he also testified that the actual deed he signed was written in Kannada language, which he did not fully understand. There also was nothing to refute defendant's position that he had never been involved with the properties since he obtained his interests, and had never paid any property taxes.

---

[17] If the parties did not intend for an intentional or affirmative act to trigger the forfeiture clause, they could have stated: "Any unidentified assets that are owned by a party or in which a party has an equitable interest that are discovered to be owned by a party or subject to the equitable interest of a party shall be awarded to the other party." But the parties clearly intended an additional requirement of *concealing* to trigger the forfeiture.

-15-

The trial court's finding on this matter also necessarily involves a favorable credibility determination of defendant, and we defer to a court's findings when they are based on the credibility of the witnesses. See *Seifeddine*, 327 Mich App at 516. The trial court did not clearly err by finding that defendant's failure to disclose the real properties was not an intentional act to conceal. Accordingly, the trial court did not abuse its discretion when it denied plaintiff's motion to award the properties to her under ¶ 37 of the parties' settlement agreement.

## III. CONCLUSION

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly