*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JEFFREY JAMES ESCUE,

　　　　　　　　Plaintiff-Appellee,

v

DARLENE MARIE ESCUE,

　　　　　　　　Defendant-Appellant.

UNPUBLISHED
November 21, 2023

No. 360393
Oakland Circuit Court
LC No. 2019-872846-DO

Before: MURRAY, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right a judgment of divorce issued after a bench trial. Previously, the trial court granted defendant's motion for partial summary disposition after an evidentiary hearing, and held that a prenuptial agreement was valid and enforceable. Defendant challenges the trial court's earlier decision, its refusal to invade plaintiff's separate assets, and its denial of her request for attorney fees. We affirm.

## I. BACKGROUND

Plaintiff and defendant married in March 2012. This was the second marriage for both parties. They each had children from their previous marriages, but had no children with one another. The parties each experienced contentious divorces following their first marriages. When the parties began dating in 2010, plaintiff lived in a condominium (the Bent Trail property), which was owned by his living trust. In 2011, plaintiff bought a house in Northville (the Cypress property). Defendant, a real estate agent, acted as the buyer's agent for the Cypress property. Plaintiff closed on and moved into the Cypress property in approximately November 2011. Defendant acted as seller's agent for the Bent Trail property, which was listed for sale in February 2012 and sold in March 2012.

In January 2012, defendant accepted plaintiff's marriage proposal and agreed to plaintiff's request to sign a prenuptial agreement. Plaintiff created a prenuptial agreement modeled after a form he found online to govern the division of the parties' property in the event of divorce or death. The prenuptial agreement included two exhibits created by plaintiff that detailed the parties' assets,

income, and debt. Neither party was represented by counsel. The parties signed the prenuptial agreement before a notary public in January 2012.

In May 2019, after a breakdown in the marriage, plaintiff filed a complaint for divorce. Defendant filed a countercomplaint, requesting a fair and equitable division of the assets and the debts of the parties. Plaintiff moved for partial summary disposition under MCR 2.116(C)(10), requesting the trial court to enforce the parties' prenuptial agreement. The trial court conducted an evidentiary hearing and found that the agreement was valid and enforceable.

After an eight-day bench trial, the court issued an opinion and order distributing the marital estate largely in accordance with the parties' prenuptial agreement, and denying defendant's request for attorney fees. The court entered a judgment of divorce consistent with its opinion and order. Defendant now appeals.

## II. THE PRENUPTIAL AGREEMENT

Defendant first argues that the trial court erred by finding that the parties' prenuptial agreement was valid and enforceable. We disagree.

The interpretation of a contract, such as a prenuptial agreement, is a question of law that we review de novo, including whether the language in the agreement is ambiguous. *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005). In this case, the trial court also held an evidentiary hearing to determine the validity of the prenuptial agreement. We review factual findings regarding the validity of a contract's formation for clear error. *Hodge v Parks*, 303 Mich App 552, 558, 844 NW2d 189 (2014) "A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made." *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012). "Special deference is afforded to a trial court's factual findings that are based on witness credibility." *Hodge,* 303 Mich App at 555.

It is well established that Michigan recognizes the validity of prenuptial agreements governing the division of assets in the event of a divorce. *Reed*, 265 Mich App at 142. "[P]renuptial agreements are contracts subject to the rules governing construction of contracts generally." *Reed*, 265 Mich App at 149. "A court should never disregard a valid prenuptial agreement, but should instead enforce its clear and unambiguous terms as written." *Woodington v Shokoohi*, 288 Mich App 352, 372; 792 NW2d 63 (2010). "In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." *Phillips v Homer*, 480 Mich 19, 24; 745 NW2d 754 (2008) (cleaned up). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Id*.

But prenuptial "agreements may be voided if certain standards of fairness are not satisfied." *Reed*, 265 Mich App at 142 (cleaned up). As explained in *Reed*:

A prenuptial agreement may be voided (1) when obtained through fraud, duress, mistake, or misrepresentation or nondisclosure of material fact, (2) if it was unconscionable when executed, or (3) when the facts and circumstances are so

-2-

changed since the agreement was executed that its enforcement would be unfair and unreasonable. [*Id.* at 142-143.]

Defendant argues that the trial court should have invalidated the prenuptial agreement because plaintiff failed to disclose all of his assets when he prepared the prenuptial agreement. Specifically, defendant contends that plaintiff did not disclose the Bent Trail property, stock options from his employer, and a retirement benefit from his former employer. Prenuptial agreements establish "a special duty of disclosure not required in ordinary contract relationships so that the parties will be fully informed before entering into such agreements." *In re Benker Estate*, 416 Mich 681, 689; 331 NW2d 193 (1982). This special duty requires parties to disclose their assets to each other. *Id*. at 690.

The party seeking to invalidate a prenuptial agreement because of nondisclosure bears the burden of proof. *In re Benker Estate*, 416 Mich at 690. Certain circumstances may support a rebuttable presumption of nondisclosure. For example, our Supreme Court held

> the presumption is properly invoked when the facts are, in general, as follows. One, the antenuptial agreement provides for a complete waiver of all rights of inheritance and rights of election by the widow and does not make any provision for her upon her husband's death. Two, the husband's estate is very ample in comparison to the wife's. Three, the decedent was shown to be rather secretive about his financial affairs, lived very modestly, and gave no outward appearance of his wealth. Four, the agreement makes no reference whatsoever, in general or specific terms, to whether the parties had been fully informed of the property interests held by each other. Five, the widow was not represented by independent counsel. Six, the attorney who drafted the subject agreement testified in a deposition as to his normal procedure in such a matter and stated that he normally would discuss the assets of the parties, but that he did not press the full disclosure matter. Seven, the scrivener testified that he was not concerned with what the widow would get. [*Id.* at 693.]

Although defendant argues that she was not fully informed when she signed the prenuptial agreement because plaintiff failed to disclose material assets, defendant admitted that she did not read the agreement when she signed it. In fact, she testified that she did not read the 2012 prenuptial agreement until 2019. "Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents." *Watts v Polaczyk*, 242 Mich App 600, 604; 619 NW2d 714 (2000). The "failure to read an agreement is not a defense in an action to enforce the terms of a written agreement." *Id*. Plaintiff's alleged failure to disclose certain assets could not have induced defendant to sign the agreement if defendant did not read the agreement or discuss the agreement with defendant before she signed it.

Notwithstanding defendant's failure to read the agreement before she signed it, we are not left with a definite and firm conviction that the trial court made a mistake by finding that the nondisclosures cited by defendant were not material. First, defendant argues that plaintiff's failed to disclose the Bent Trail property on the schedule of his assets attached to the prenuptial agreement. But the evidence established that defendant was fully aware of the Bent Trail property at the time that the parties executed the agreement. Plaintiff lived at the Bent Trail property when the parties dated, and defendant acted as the selling agent when plaintiff sold the property. Next,

defendant contends that plaintiff failed to disclose unvested stock options from his employer, Sirius XM. The trial court credited plaintiff's testimony that he did not know how to value the stock options because they did not have any value when he created the prenuptial agreement. We defer to the trial court's factual findings that are based on witness credibility. See *Hodge*, 303 Mich App at 555. Finally, defendant asserts that plaintiff failed to disclose a retirement benefit from his former employer, Ford Motor Company. During the parties marriage, plaintiff received a $15,000 check from Ford Motor Company. The check was issued on the tenth anniversary of his last day of employment at Ford. The trial court credited plaintiff's testimony that he was surprised to receive the check from Ford because he had not worked there in 10 years. Again, we defer to the trial court's factual findings that are based on witness credibility. See *Hodge*, 303 Mich App at 555. Moreover, defendant failed to present any evidence to refute plaintiff's testimony regarding any of these assets. Considering this evidence, the trial court did not clearly err by finding that these were not material nondisclosures that invalidated the prenuptial agreement.

Defendant further argues that the trial court should have found the agreement void because it was unconscionable. See *Reed*, 263 Mich App at 142-143. In order for a contract to be unconscionable, it must be both procedurally and substantively unconscionable. *Vittiglio v Vittiglio*, 297 Mich App 391, 403; 824 NW2d 591 (2012). "Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the [agreement]." *Clark v DaimlerChrysler Corp*, 268 Mich App 138, 144; 706 NW2d 471 (2005). "Substantive unconscionability exists where the challenged term is not substantively reasonable." *Id*. "A term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience." *Id*. Defendant does not argue that the agreement was unconscionable when executed, but rather she argues that plaintiff's failure to disclose certain assets was unconscionable. But defendant did not advance an argument or present evidence that she did not have a realistic alternative to accepting the agreement or that the terms were so extreme as to shock the conscious. Accordingly, defendant has failed to establish that the agreement was void for unconscionability.

Defendant also argues that the trial court should have refused to enforce the prenuptial agreement because the parties' circumstances had significantly changed since the agreement was executed and its enforcement would result in an inequitable settlement. "[T]he first step in analyzing whether changed circumstances might justify refusing to enforce a prenuptial agreement is to focus on whether the changed circumstances were foreseeable when the agreement was made." *Reed*, 265 Mich App at 144. Defendant maintains plaintiff grew his wealth during the marriage, but she was leaving the marriage with very little even though she contributed income to the marriage. In *Reed*, this Court found that "the benefit accruing to one party from the disparate growth of his assets" was not a changed circumstance that would render an agreement unfair and unreasonable to enforce. *Id*. at 147.

The prenuptial agreement in this case contained the following provision:

1. **SEPARATE PROPERTY**. Except as otherwise provided in this Agreement, the following property now owned or later acquired by either party shall remain and be their separate property:

- All property, including real or personal property, the income from such property, and the investments and re-investments of such property; and,

- All property acquired by either party by gift, devise, bequest, or inheritance.

The property currently owned by each party is described on Exhibits A and B to this Agreement, which by his reference are incorporated into this Agreement. Such separate property of each party shall be subject exclusively to that party's own individual use, control, benefit, and disposition. Neither party shall, before or after the contemplated marriage, acquire for himself or herself individually, nor for his or her assignees or creditors, any interest in the separate property of the other party, no any right to use, control, benefit, or disposition of such property.

As reflected by the above language, the parties agreed to maintain their separate property whether acquired before, during, or after the marriage. The agreement in *Reed* contained similar language. This Court held that because the parties "agreed to be captains of their own financial ships and to decide their own destiny . . . it was clearly foreseeable at the time the agreement was entered into that the parties would acquire separate assets over the course of the marriage." *Reed*, 265 Mich App at 146-147. The *Reed* Court further held that it would've been readily apparent "that the parties' separate assets could grow at disparate rates and that one party's assets might grow significantly more than the other party's . . . ." *Id*. at 147. It was especially apparent in this case. Defendant entered the marriage with debts exceeding the value of her assets. She declared bankruptcy before the marriage, had outstanding tax liability, owed outstanding attorney fees from her previous divorce, and she was not receiving child support for her minor children. Conversely, the value of plaintiff's assets far exceeded his debts. And while plaintiff had several retirement accounts at the time the prenuptial agreement was executed, defendant had none.

We conclude that the trial court did not err by ruling that the prenuptial agreement was valid and enforceable.

## III. COMMINGLING

Defendant argues that the trial court erred by enforcing the prenuptial agreement because the parties' commingling of assets into plaintiff's bank account converted the bank account and all assets purchased with money from that account into joint marital assets. We disagree.

The prenuptial agreement provides:

6. **JOINT PROPERTY**. The parties agree and understand that nothing in this Agreement shall preclude them from acquiring property interests during the course of their marriage as joint tenants with rights of survivorship or as tenants in common with undivided interests. Additionally, nothing in this Agreement shall preclude them from making binding transfers of real or personal property to the other at any time during the marriage.

Nothing in this Agreement shall preclude either party from making provisions for the other party under the terms of a Last Will and Testament, signed before or after the marriage, in which one party provides for the distribution of property to the other in excess of any provisions contained in this Agreement.

Furthermore, nothing in this Agreement shall preclude the parties from voluntarily electing to commingle a part or all of the income from their respective properties for investment purposes or for the purpose of jointly providing for their mutual support and living expenses, or for other reasons.

Defendant contends that the commingling of monies in a separate account transforms that account into a joint, marital asset.[1] Indeed, the prenuptial agreement does not prevent the parties from commingling their funds or voluntarily creating joint property. But defendant's interpretation ignores the language in the Separate Property section of the prenuptial agreement, which states that "property now owned or later acquired by either party shall remain and be their separate property." Plaintiff's bank account was specifically listed as his separate property as provided for in the Separate Property section.

The prenuptial agreement also provides:

3. **EARNINGS DURING THE MARRIAGE**. Each party agrees that all of the earnings and accumulations resulting from the other spouse's personal services, skills, efforts, work, and investment earnings, together with all property acquired or income derived from such sources, shall be the separate property of the party to whom the earnings and income are attributable, subject to other provisions of this Agreement. Each of the parties understands that except for this Agreement, such earnings and accumulations of the other throughout the marriage would be joint property, and that by this Agreement such earnings and accumulations during the marriage are made the separate property of the person to whom the earnings and accumulations are attributable. It is the expectation of the parties that the earnings and accumulations described in this Agreement may be used for joint household expenses or other joint purposes. Such use shall not be construed to imply joint ownership of the earnings or accumulations.

The couple's earnings will be SEPARATE, not joint property.

When interpreting a contract, we must ascertain and enforce the parties' intent as expressed in its plain terms. *Phillips*, 480 Mich at 24. We must also read and construe a contract as a whole. *Smith v Smith*, 292 Mich App 699, 702; 823 NW2d 114 (2011). "All the parts must be harmonized as much as possible, and each word of the contract must be given effect . . . ." *Id*. Reading the prenuptial agreement in this case as a whole and giving meaning to all of its terms, it allows for commingling of earnings, accumulations, and the creation of joint assets. But the mere commingling of earnings and accumulations does not automatically create joint property. As in *Reed*, the heart of the prenuptial agreement in this case is the first paragraph providing for separate property, which refers to the attached exhibits that listed the parties' separate property. The trial court did not err by ruling that the parties' commingling of income for payment of expenses or

---

[1] We find all of the cases relied on by defendant factually distinguishable because the parties in those cases did not have prenuptial agreements that governed the division of property in the event of a divorce, as the parties did here.

other reasons was clearly provided for in the prenuptial agreement, and the commingling did not convert plaintiff's bank account or any of the parties' other separate assets into joint property.

## IV. INVASION OF SEPARATE ASSETS

Next, defendant argues that the trial court failed to exercise its equitable authority to invade plaintiff's separate assets for defendant's suitable support and maintenance. We disagree.

This Court reviews a trial court's decision whether to award spousal support for an abuse of discretion. *Loutts*, 298 Mich App at 25. "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. (cleaned up). "This Court reviews a property distribution in a divorce case by first reviewing the trial court's factual findings for clear error, and then determining whether the dispositional ruling was fair and equitable in light of the facts." *Olson v Olson*, 256 Mich App 619, 622; 671 NW2d 64 (2003). "The court's dispositional ruling should be affirmed unless this Court is left with the firm conviction that the division was inequitable." *Pickering v Pickering*, 268 Mich App 1, 7; 706 NW2d 835 (2005).

A spouse's separate estate can be invaded for redistribution when the statutory exceptions under either MCL 552.23(1)[2] or MCL 552.401[3] have been met. *Reeves*, 226 Mich App at 494. MCL 552.23(1) authorizes a court to invade separate assets if, after the division of marital assets, one party demonstrates an additional need. *Id*. at 495. MCL 552.401 authorizes a court to invade one spouse's separate property when the other spouse "contributed to the acquisition, improvement, or accumulation of the property." See *id*. at 494-495. "When one [spouse]

---

[2] MCL 552.23(1) provides:

Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party . . . the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

[3] MCL 552.401 provides:

The circuit court of this state may include in any decree of divorce or of separate maintenance entered in the circuit court appropriate provisions awarding to a party all or a portion of the property, either real or personal, owned by his or her spouse, as appears to the court to be equitable under all the circumstances of the case, if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property. The decree, upon becoming final, shall have the same force and effect as a quitclaim deed of the real estate, if any, or a bill of sale of the personal property, if any, given by the party's spouse to the party.

significantly assists in the acquisition or growth of [the other] spouse's separate asset, the court may consider the contribution as having a distinct value deserving of compensation." *Id*. at 495.

In this case, the prenuptial agreement provides that neither party will seek alimony, support, or any relief other than a distribution consistent with the agreement:

> **9. SUPPORT**. Each of the parties has income from individual property interests sufficient to provide for his or her respective support. Each party has been self-supporting for a period of time prior to the contemplated marriage. Both parties feel that they are capable of future self-support and of maintaining themselves on a self-supporting basis. Therefore, in the event of a marital separation or dissolution, it is agreed and understood that neither party shall seek or obtain any form of alimony or support from the other, or seek any relief, other than a distribution of their joint property interests or those property interests acquired during the course of the marriage, in any manner other than as provided by this Agreement.

In *Allard v Allard*, 318 Mich App 583, 587; 899 NW2d 420 (2017), this Court considered whether parties could waive a trial court's discretion to award spousal support through a prenuptial agreement, and held "parties cannot, by antenuptial agreement, deprive a trial court of its equitable discretion under MCL 552.23(1) and MCL 552.401." Parties do not have the right to contract to bind the equitable authority granted to the trial court under these statutes, and any attempt to do so necessarily voids such an agreement. *Id*. at 601. A trial court cannot be prohibited from exercising its equitable powers under MCL 552.23(1) and MCL 552.401, regardless of the parties' antenuptial agreement. *Id*. at 602-603. But these two statutes do not give "parties to a divorce any statutory right to *petition* for invasion of separate assets . . . . Rather, the statutes simply empower the circuit court" to invade separate property if equity demands it. *Id*. at 601. In other words, the parties cannot use their prenuptial agreement to force a trial court to order an inequitable property settlement. *Id*. If a trial court concludes that a prenuptial agreement's distribution of property is fair and equitable, it does not need to utilize its equitable powers under MCL 552.23(1) and MCL 552.401. *Skaates v Kayser*, 333 Mich App 61, 83; 959 NW2d 33 (2020).

In this case, the trial court recognized its discretion to invade plaintiff's separate assets based on necessity, but declined to do so. There was evidence and testimony that defendant quit her managerial, administrative position in 2018 to return to real estate sales, which substantially lowered her annual income. The trial court found that this voluntary change in defendant's career and resulting reduced income did not support an additional need as required to invade separate assets. The trial court also found that defendant did not significantly contribute to plaintiff's separate assets. Both parties testified that defendant came into the marriage with a great deal of debt. Defendant acknowledged that she did not pay any mortgage payments, property taxes, or homeowner association fees. Defendant had minor children who lived in the parties' home until approximately 2017 or 2018, and her ex-husband did not pay child support. Defendant continued to provide financial assistance to her adult children. The trial court found that defendant "was still able to benefit and live the lavish lifestyle she testified to while Plaintiff . . . continued to pay the marital bills" and her earnings history demonstrated "that she is capable of earning an income of which to support herself on." The trial court's factual findings were not clearly erroneous, and we are not left with the firm conviction that the division was inequitable. The trial court did not abuse

its discretion by denying defendant's request to invade plaintiff's separate assets in order to devise an equitable division of assets or to order spousal support.

## V. ATTORNEY FEES

Finally, defendant argues that the trial court erred by denying her request that plaintiff pay her attorney fees. We disagree.

We review a trial court's decision whether to award attorney fees in a divorce proceeding for an abuse of discretion. *Loutts*, 309 Mich App at 215-216. We review the findings of fact on which the trial court based its decisions for clear error and review any issues of law de novo. *Id*. at 216.

In a divorce action, attorney fees are recoverable under both statute and court rule. *Reed*, 265 Mich App at 164. Pursuant to MCL 552.13(1), in a divorce action "the court may require either party . . . to pay any sums necessary to enable the adverse party to carry on or defend the action, during its pendency." And relevant to this action, MCR 3.206(D)(2)(a) states that the party requesting attorney fees "must allege facts sufficient to show that" he or she "is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay[.]" MCR 3.206(D)(2)(a) has been interpreted to require an award of attorney fees "only as necessary to enable a party to prosecute or defend a suit." *Myland v Myland*, 290 Mich App 691, 702; 804 NW2d 124 (2010) (cleaned up). "With respect to a party's ability to prosecute or defend a divorce action, a party may not be required to invade her assets to satisfy attorney fees when she is relying on the same assets for her support." *Id*. (cleaned up). The trial court must also consider whether the other party has the ability to pay or contribute to the requesting party's fees. *Id*. at 703.

The trial court did not err by concluding that defendant failed to allege facts that she was unable to bear the expense of the action. During the proceedings, plaintiff paid $20,000 toward defendant's attorney fees. Evidence was presented that defendant's salary was reduced in 2018 and 2019 because of a voluntary career change. The trial court further concluded that an award of attorney fees was not required for defendant to defend this action because a substantial amount of fees and costs were incurred by defendant pursuing testimony at trial regarding the validity and enforceability of the prenuptial agreement, despite the trial court's earlier ruling that the agreement was valid and enforceable and that commingling did not create joint property. In other words, those fees and costs were not necessary to defend the divorce action. We conclude that the trial court properly considered the financial situations of the parties and the equities involved when it declined to award defendant attorney fees and thus it did not abuse its discretion. See *Myland*, 290 Mich App at 703.

Affirmed.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Sima G. Patel